SCHENLEY DISTILLERS, Inc. and Joseph S. Finch and Company, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 15415.

United States District Court
W. D. Pennsylvania.

July 22, 1957.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Elder W. Marshall, Pittsburgh, Pa., and Dewey, Ballantine, Bushby, Palmer & Wood, and Thomas E. Dewey, New York City, for plaintiff.

Benjamin H. Pester, Washington, D. C., and D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., for the Government.

McILVAINE, District Judge.

The taxpayers, Schenley Distillers, Inc., hereinafter referred to as Schenley, and Joseph S. Finch and Company, hereinafter referred to as Finch, filed a complaint against the United States of America for refund of internal revenue taxes paid on distilled spirits withdrawn from an internal revenue bonded ware-

house from November 1, 1951, to September 30, 1955, in the Pittsburgh, Pennsylvania, Internal Revenue District. Their claim is in two counts.

In the first count, Finch seeks a refund of $137,151 plus interest, which is the $10.50 per proof gallon distilled spirits tax as to 13,062 proof gallons of distilled spirits which allegedly evaporated after tax payment and prior to bottling.

They alleged that the spirits involved in this claim were stored in the Internal Revenue Bonded Warehouse No. 4 at Schenley, Pennsylvania, of which Finch was the proprietor at the time of payment, and that the tax was paid by the taxpayer as warehouse proprietor.

Finch alleges that at the time it paid the tax on these spirits it had no market for them, that the tax on the distilled spirits was paid, and the spirits were withdrawn from the internal revenue bonded warehouse when they reached or were immediately approaching the age of 8 years in bond due to the provisions of law and regulations which require tax payment and withdrawal of distilled spirits within 8 years of original entry for deposit in an internal revenue bonded warehouse. It is alleged that at the time the spirits were tax-paid and withdrawn there was no market for them, and that they evaporated while being held in barrels after tax payment and before bottling. Therefore, the plaintiffs claim that they are entitled to a refund of the $137,151.

In the second count, it is alleged that the distilled spirits tax of $10.50 was paid on 26,110,000 proof gallons of distilled spirits of which 25,985,849 of the said gallons were owned by Finch and tax was paid by Finch. As to this amount, Finch claims a refund of $1.50 per gallon. Finch, in the alternative, in its capacity of warehouseman demands judgment in respect to 25,790,705 gallons on which the internal revenue tax was paid; and Schenley in its capacity as warehouseman demands judgment against the defendant in respect to 195,144 gallons on which the tax was paid. Finch as warehouseman also claims a refund as to 124,151 gallons on which the tax was paid. The basis for its claim for refund is that plaintiffs allege that when the spirits were distilled the rate of tax was $9 per gallon and after they had been distilled the rate was increased $1.50 per gallon to an aggregate of $10.50 per gallon. The plaintiffs allege these claims for refund are subject to certain adjustments..

The plaintiffs also allege in their complaint that they made timely claims for refund in accordance with the law and, therefore, are entitled to maintain this suit. The Government does not seriously contest these facts, and having filed a motion to dismiss the plaintiffs' complaint, must be deemed to have admitted them for the purposes of this motion. However, the plaintiffs in their complaint also make allegations that the tax is unconstitutional, being an unapportioned tax, and list their reasons therefor in Paragraphs 20 through 29 of their complaint. They allege that the force-out provision of the law is a violation of due process as seen by Paragraphs 30 through 33 of their complaint. In Paragraphs 34 through 43, the plaintiffs set forth circumstances indicating that there has been an oversupply of distilled spirits and state the problems involved in the manufacture of distilled spirits that have been encountered since and during World War II and the Korean conflict. In Paragraphs 44 through 58, Finch alleges that it faced disastrous alternatives, and alleges what it did, and the costs it incurred complying with the internal revenue laws. In Paragraphs 59 through 66, plaintiffs allege that the force-out provision has caused disastrous consequences to them and up to · the present time. In Paragraphs 67 through 76, they allege that more disastrous consequences will result in the immediate and indefinite future as a result of the force-out provision. In Paragraphs 77 through 80, they allege that they are at a competitive disadvantage with foreign producers who compete in the markets in the United States. In Paragraphs

81 through 97, the plaintiffs allege that the Treasury is losing revenue because of this force-out provision.

The Government has filed a motion to dismiss the complaint and in the alternative a motion to strike. The Government urges this Court to dismiss the complaint on the grounds that the complaint fails to state a claim on which relief can be granted, that the tax statutes are constitutional and valid, and that the plaintiffs are estopped from attacking the constitutionality of the statutes because they have obtained and enjoyed provisions granted with respect to the distilled spirits bonding provisions under the statutes. It also urges dismissal because Finch, it claims, is not entitled to a refund because it paid the taxes only as a warehouseman, and finally urges that the complaint be dismissed because the plaintiffs have disregarded Rule 8(a) (2) of the Federal Rules of Civil Procedure, 28 U.S.C. because they allege immaterial, impertinent, and redundant matter which cannot readily be separated from the necessary and proper allegations in the refund suit.

The complaint filed in this case consists of 107 numbered paragraphs covering 40 legal-sized pages. The Government urges that it should not be required to file an answer to such a lengthy complaint because it complains that three-fourths of the complaint contains irrelevant, immaterial, and argumentive matters. The Government points out that Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. Certainly this complaint is not a short statement of the claim. However, the plaintiffs vigorously maintain that what they have pleaded is necessary for the determination of the issue. The Government urges that the entire complaint be stricken for the failure of the plaintiffs to comply with the requirements of Rule 8(a).

Professor Moore points out that:

"What is a 'short and plain' statement depends, of course, on the circumstances of the case. A complaint for conversion, or to recover on a note, can be stated in half a page. An anti-trust action, or an action to enjoin enforcement of an unconstitutional statute, or an interpleader action, or a stockholder's suit may require more particularity." 2 Moore's Federal Practice, § 8.13, p. 1653.

Thus, it appears to this Court that what constitutes a "short and plain" statement must be determined by the type of case, the relief sought, and the situation of the parties. Each complaint must be evaluated individually.

The Government in its brief points out that the courts are somewhat reluctant to grant motions which have the effect of delaying proceedings. This is probably true, and in view of the decision that we are reaching in this case we find it unnecessary to rule on the question of whether the complaint contains a short and plain statement of the claim showing that the pleader is entitled to relief for to do so in this case would cause considerable delay in a matter which is of utmost importance both to the plaintiffs and to the Government, both of whom desire the Court to meet the constitutional question involved. See Transcript of Argument on Motion to Dismiss, held June 19, 1957, p. 3.

The Government also urges that the Court dismiss the complaint as to Finch because it is not entitled to a refund having paid the tax only as a warehouseman. However, in the complaint it appears that Finch owned approximately 99% of the distilled spirits, that all of the spirits were stored in its warehouse, and it paid the taxes on them. Therefore, Finch was not only the warehouseman, but also the owner of the distilled spirits. So whether they have paid the taxes as warehouseman, or as owners, they paid taxes on whiskey which they owned and which was in their possession. Whether the warehouseman paid the tax in this case, or the owner paid the tax, the tax was paid by

Finch who was one and the same. Accordingly, the complaint cannot be dismissed on this ground.

The Government then urges that the plaintiffs are estopped from attacking the constitutionality of the statutes because they have obtained and are enjoying privileges with respect to the distilled spirits bonding provisions.[1]

■■ While it is true as an abstract principle of law that one who has obtained certain benefits and privileges under a statute is estopped thereafter from attacking the statute as being unconstitutional, see Callanan Road Co. v. United States, 1953, 345 U.S. 507, 73 S.Ct. 803, 97 L.Ed. 1206; United States v. City and County of San Francisco, 1940, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; St. Louis Malleable Casting Co. v. Prendergast Co., 1923, 260 U.S. 469, 43 S.Ct. 178, 67 L.Ed. 351, we do not feel that that principle of law is applicable in this case. In the cases relied upon by the Government, the one attacking the constitutionality of the statute obtains something under the statute which he otherwise could not have obtained had there not been a statute. For instance, in the Callanan case a certificate of public convenience and necessity was permitted to be transferred. In the San Francisco case, the federal government granted certain privileges to the City of San Francisco, and the city wanted to keep the privileges and have the act declared unconstitutional. Whereas in the St. Louis case the taxpayers took advantage of the sewer system set up but did not want to pay for it. The facts of the cases which have set forth the principle on which the Government rely are clearly distinguishable from the instant case wherein the

taxpayer has complied with the law, paid the taxes due in accordance with the law, and is suing for a refund in accordance with the law. While it is true there are advantages to plaintiff under this statute, certainly a mere extension of time for payment of a tax is not a benefit or privilege that forever bars a taxpayer from seeking a refund. To hold otherwise would mean that every taxpayer who asks for an extension under any tax law passed by Congress allowing for such request would do so at the peril of not being able to claim a refund if the act was declared unconstitutional. Under our society as it exists today, extensions are a commonplace if not a necessity. Taxes affect almost every member of the public. To attribute to every taxpayer the ability of a constitutional lawyer would be unrealistic. Therefore, we do not feel that the taxpayers are estopped.

We are, therefore, compelled to meet the question raised as to whether or not the force-out provision is constitutional. We are not unmindful of the rules which would require us to avoid passing on a constitutional question. A clear statement as to these is annunciated by Mr. Justice Brandeis in his concurring opinion in Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688.

The Government in the argument of this case stated that:

"the constitutional question of the statute is a question of law and in the plaintiffs' briefs they do not take exception to that. It appears to us, therefore, that this case should be decided on the motion to dismiss." Transcript of Argument, Morning Session, June 19, 1957, p. 3.

---

1. The Government alleges that the principal privileges appertaining to the bonded status of distilled spirits are: (1) postponement of the time for payment of the tax (26 U.S.C.A. § 5006(b); (2) remission of the tax on distilled spirits lost or destroyed while in bond (26 U.S. C.A. § 5011); (3) bottling in bond before tax payment, with allowance for all losses incident to bottling, and attendant labeling privileges (26 U.S.C.A. § 5243); (4) exportation without payment of tax (26 U.S.C.A. § 5247); (5) transfer in bond, i. e. without payment of tax (26 U.S.C.A. § 5246); (6) transfer for redistillation without payment of basic tax or rectification taxes (26 U.S. C.A. § 5194(f)).

The position of counsel for the plaintiff was:

"that if the Court should in this case hold that it is—that the force out provision is a constitutional levy and does not violate either the due process clause or the unapportioned tax upon the ownership of property, I imagine that our complaint should be dismissed." Transcript of Argument, Afternoon Session, June 19, 1957, p. 11.

Turning then to the first count in the complaint, the plaintiffs urge that the tax levied is an unconstitutional property tax in that the tax was exacted solely because the property was in existence on the tax payment date, that it fell solely because it was in existence, and that the tax exacted at the end of 8 years was a direct tax on property unapportioned and, therefore, expressly forbidden. What is forbidden by the Constitution is that, "No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration hereinbefore directed to be taken." U.S.Const. art. I, § 9, cl. 4. Therefore, the Constitution prohibits a direct tax unless it is laid in proportion to the census. However, it is significant to note that the Constitution does not tell us what is a direct tax. Therefore, in order to determine what a direct tax is we must look at what the framers of the Constitution were thinking about when they drafted our Constitution, and the decisions of our Supreme Court; and then, of course, we must see whether the tax here is a direct tax within the meaning of the Constitution or whether it is an excise tax.

Perhaps the most authoritative source of information as to what were the thoughts of the drafters of the Constitution are found in the notes of James Madison. It is reported there that, "Mr. King asked what was the precise meaning of direct taxation. No one answered." *The Debates in the Federal Convention of 1787 Which Framed the Constitution of the United States of America*, Reported by James Madison.—

Hunt & Scott Editions, Oxford Press, 1920, p. 435. However, this was not the only reference to a direct tax. Alexander Hamilton had a proposed draft of the Constitution which he submitted. It provided that:

"Taxes on lands, houses, and other real estate, and capitation taxes shall be proportioned in each State by the whole number of free persons, except Indians not taxed, and by three fifths of all other persons." See Debates in the Federal Convention of 1787, supra, p. 615.

There also appeared to be considerable discussion about how the proportion of direct taxes should be determined. The final draft used fewer words than Hamilton had used and provided: "No capitation, or other direct tax shall be laid, unless in proportion to the census or enumeration herein before directed to be taken." See Debates in the Federal Convention of 1787, supra, p. 631.

It might, therefore, seem that the convention when it used the words, "direct taxes," thought of taxes on real estate and was not thinking of taxes on personal property. This view is buttressed by the opinion of the Supreme Court in the case of Hylton v. United States, 1796, 3 Dall. 171, 1 L.Ed. 556.

In that case Mr. Justice Chase said:

"The Constitution evidently contemplated *no taxes* as *direct taxes,* but only such as Congress could lay in *proportion to the census.* The rule of *apportionment* is only to be adopted in *such* cases where it can *reasonably* apply; and the *subject* taxed, must ever determine the application of the rule.

"If it is proposed to tax any *specific article* by the rule of *apportionment,* and it would evidently create great inequality and injustice, it is unreasonable to say, that the Constitution intended *such* tax should be laid by *that* rule." Supra, 3 Dall. at page 174.

Mr. Justice Paterson and Mr. Justice Iredell also pointed out that they thought

that the Constitution contemplated none as direct but such as could be apportioned. Mr. Justice Chase continued in his opinion that:

"I am inclined to think, but of this I do not give a judicial opinion, that the *direct* taxes contemplated by the Constitution, are only *two*, to wit, a *capitation*, or *poll* tax, *simply*, without regard to *property, profession*, or any *other circumstance;* and a tax on LAND.—I doubt whether a tax, by a *general assessment* of *personal* property, within the *United States*, is included within the term *direct* tax." Supra, 3 Dall. at page 175.

Thus, it appears that a tax on personal property was permitted within the United States until the celebrated decision in Pollock v. Farmers Loan & Trust Co., 1895, 157 U.S. 429, 15 S.Ct. 673, 39 L. Ed. 759. Rehearing 1895, 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108. In that case, the Court expressly held " * * * that taxes on personal property, or on the income of personal property, are likewise direct taxes." 158 U.S. 601, 637, 15 S.Ct. 912, 920, 39 L.Ed. 1108.

Consequently, we have a serious constitutional question unless this tax is an excise.

In order to accurately determine what Congress has taxed, we should examine the statute and see where the incidence of tax falls. Congress has provided that:

"There shall be levied and collected on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of * * * on each proof gallon * * * to be paid by the distiller or importer when withdrawn from bond." 26 U.S.C.A. § 2800(a) (1).[2]

It is clear then that Congress has intended to tax three things in respect to distilled spirits:

First, a tax is imposed on all distilled spirits in bond in the United States;

Second, a tax is imposed on all distilled spirits produced in the United States; and

Third, a tax is imposed on all distilled spirits imported into the United States.

"Excises are 'taxes laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges.'" Flint v. Stone Tracy, 1911, 220 U.S. 107, 151, 31 S.Ct. 342, 349, 55 L.Ed. 389.

They are also defined as:

" * * * a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of the privilege, and that every form of tax not imposed directly upon the property must constitute an excise if it is a valid tax of any description." Lutz v. Arnold, 1935, 208 Ind. 480, 489, 193 N.E. 840, 843, 196 N.E. 702.

█ It is clear to this Court that the tax on distilled spirits falls within the traditional definition of an excise. The tax on distilled spirits has historically always been an excise. Distilled spirits since the days of Charles, II, have been the subject of excise. Pennsylvania laid an excise tax on whiskey as early as 1684. In Great Britain and Canada the term, excise officer, is used to describe the government officers who supervise the collection of distilled spirits tax. It is clear to this Court that the distilled spirits tax levied under Section 5001 of Title 26 U.S.C.A. and under Section 2800 of Title 26 U.S.C.A. is an excise tax and not a direct tax on property.

A review of the complaint filed by the plaintiffs, the exhaustive and thorough briefs, and the consideration of the illuminating argument made by counsel for the plaintiff indicate to the Court

2. The present statute which was enacted on August 16, 1954, as amended, provides "there is hereby imposed on all distilled spirits in bond or produced in or im-ported into the United States an internal revenue tax at the rate of * * * on each proof gallon * * *." 26 U.S.C.A. § 5001(a) (1).

that if the force-out provision of the Internal Revenue Code in respect to distilled spirits is constitutional the plaintiffs' case is at an end. They base their entire case on the fact that the force-out provision is unconstitutional. Transcript of Argument, Morning Session, June 19, 1957, p. 38. At least insofar as the first count of their complaint is concerned, they in effect allege that the force-out provision converts what was a valid excise tax on distillation into a property tax.

The heart of the plaintiffs' contention is that they are entitled to recover because the force-out provision of the Internal Revenue Code is unconstitutional. They maintain that the tax is exacted at the end of 8 years. With this, we cannot agree. A clear reading of the statute indicates that the tax is levied when the spirits are distilled. It is only the collection of them which is postponed for 8 years, providing the spirits are placed in a bonded warehouse.

As we have previously stated, we do not feel that the tax levied is a property tax within the meaning of the Constitution. The plaintiffs rely, of course, on the case of Dawson v. Kentucky Distilleries Co., 1921, 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638. However, that case is distinguishable in that there the Supreme Court interpreted Kentucky law and here we must interpret federal law. While it is true that the principles of what may constitute a property tax might be the same, and the reasoning should be used to guide our determination, nevertheless, we hold that Congress has not attempted to tax the spirits as property but has tried to excise certain features such as production, keeping in bond, and importation.

The plaintiffs then urged that the tax is a violation of the due process clause of the Constitution, Const. Amend. 5 and maintain that the tax is levied solely by the virtue of the force-out provision.

"* * * the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution. Brushaber v. Union Pacific Railroad Co., 240 U.S. 1, 24, 36 S.Ct. 236, 60 L.Ed. 493. * * * That clause is applicable to a taxing statute such as the one here assailed only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power * * *." Magnano Co. v. Hamilton, 1934, 292 U.S. 40, 44, 54 S.Ct. 599, 601, 78 L.Ed. 1109. See also Bode v. Barrett, 1953, 344 U.S. 583, 73 S.Ct. 468, 97 L.Ed. 567.

In passing on the constitutionality of this law, it is, of course, our duty to construe the act so as to uphold its constitutionality if possible. It is a well-settled principle that if two interpretations of a statute are possible one destroying it, and one saving the constitutionality of the act, it is the court's duty to adopt the latter. United States v. Delaware & Hudson Co., 1909, 213 U.S. 366, 29 S.Ct. 527, 53 L.Ed. 836. While sometimes our courts have had to make strained construction to uphold the constitutionality of the act, we do not feel that in this case any strained construction is necessary. The act in our opinion is clearly an excise tax on the production, keeping in bond, or importation of distilled spirits, and does not violate the due process clause of the Constitution and is not levied solely by the virtue of the force-out provision.

The plaintiffs also urge that the force-out provision does not serve any revenue or public purpose, and that the plaintiffs are suffering great damages because of this provision. They urge that there is an oversupply of distilled spirits and that they had no market for the whiskey in the bonded warehouse. This they feel was caused by the force-out provision. Finch has certain alternatives it claims such as (1) paying the tax at 8 years and holding the spirits subject to evaporation; (2) exporting them without paying the tax; (3) or paying the tax

and dumping the spirits on the market for whatever price they would bring; (4) or destroying the spirits or redistilling them. Finch paid the tax and held the spirits hoping to sell them later. They allege that they lost 13,062 gallons through evaporation by following this alternative. The plaintiffs allege that the situation caused by the internal revenue laws has had disastrous consequences on the industry, forcing the prices down, and that this consequence will extend to the future.

This is the first case that has been before a court in which the force-out provision has been challenged and on which the court has to make a ruling.

Congress has attempted to set up an integrated plan for collection of internal revenue taxes. Anyone who desires to produce distilled spirits must pay an internal revenue tax. There is also an internal revenue tax on the privilege of keeping distilled spirits in bond, and there is an internal revenue tax on the importation of distilled spirits.

Congress has provided that these taxes should be paid immediately when the spirits are not deposited in a bonded warehouse, but if deposited in a bonded warehouse, the tax shall be paid at the time they are withdrawn or within 8 years from original entry. It is this that the plaintiff urges is unconstitutional.

■ The plaintiffs have alleged this is an arbitrary and oppressive tax. They say that they can do nothing with the whiskey that they have stored in the warehouses, that there is no market for it, and that to pay the tax is hard on them. They rely on statements by various government officials that the government's revenues would not be substantially effected if the force-out provision were not in the law. However, even assuming that the act is oppressive in respect to the plaintiff, we must remember that the power to tax is vested entirely in the legislative branch of our Government, and no matter how oppressive taxation may be the judiciary cannot interfere. Veazie Bank v. Fenno, 1869, 8 Wall. 533, 19 L.Ed. 482. This tax is not so arbitrary as to be in effect an exercise of a forbidden power. Magnano Co. v. Hamilton, supra.

■ The Courts cannot void an act of Congress lawfully extending the taxing powers though it might appear to be exercised unwisely or oppressively, nor can they inquire into the levying of a tax within its constitutional power. McCray v. United States, 1904, 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78. Of course, no tax is valid which is not laid for a public purpose. Citizens Savings & Loan Association v. Topeka, 1874, 20 Wall. 655, 22 L.Ed. 455.

There can be no doubt that the taxation of the production, importation, and storage of distilled spirits is within the power of Congress. The plaintiffs do not seriously contest this; in fact, they only challenge the force-out provision. There is minute regulation by statute, and provisions for prolonged governmental control. These the Supreme Court pointed out:

" * * * proceed upon a recognition of the exigencies of the business. It is a matter of common knowledge that the product is not ready to be marketed for consumption when it is drawn from the still. It must undergo an aging process, and for this purpose it is kept in store for several years. In laying the tax, Congress has taken this necessity into consideration permitting a long postponement of the required payment, the spirits meanwhile being held in charge of the Government's representative." Taney v. Penn Bank, 1914, 232 U.S. 174, 183, 34 S.Ct. 288, 290, 58 L.Ed. 558.

The plaintiffs in their complaint frankly admit that the situation they are faced with, an oversupply of whiskey which is approaching a period of being kept in bond for 8 years, is one of their own doing; that is, their mistaken prediction as to the demand for whiskey. The result is that they are in a difficult position. They allege that their po-

sition is due to what they call bad legislation.

We must remember that "bad" legislation in economic effect can still be the exercise of proper legislative power. Nowhere is it more difficult or more necessary for an individual judge to exercise judicial restraint then when he is interpreting the constitutionality of what he individually may feel is unwise legislation. The question he must determine is whether Congress has the power, either express or implied, under the Constitution to act, and if so has it legally exercised that power. This is the keystone of our theory of separation of powers; this restraint is the hope of our continued constitutional government.

One of our great contributions to the science of government is this system of checks and balances including the right of judicial review. But nowhere is the thought expressed that the courts should become super-legislatures. While, of course, they must adapt the law to social realities, they must be ever vigilant that each of the three great departments of our Government remains within its own proper sphere. It may be trite but, nevertheless, true that the proper function of the legislature is to make the laws, the executive to enforce the laws, and the judicial to interpret the laws. Let it remain so.

Congress was aware of the situation facing the producers of whiskey and amended the law so as to permit the distiller to either destroy the whiskey or to redistill it without payment of the tax. This was all the relief that Congress determined to grant the industry. They did consider extending the 8-year period of bond to as high as 20 years, but decided not to change the law to that extent. The plaintiffs urge that they are at a competitive disadvantage with foreign producers; however, whether this be true or not we do not see how the Court can do anything to remedy that situation for it is fundamental that Congress has the power to control foreign commerce and it is not a question for the courts.

Whether or not the Treasury is losing revenue because of the force-out provision does not justify the Court in striking down the law. If the desired effects are not resulting, then Congress may amend the law to bring about the results, or Congress may refuse to amend the law feeling that the results are not desirable.

We must interpret the law as it is written and cannot speculate into matters of legislative policy. The 8-year bonding provision sets the period of limitation at which the internal revenue tax must be paid. Congress may well have thought when they enacted this provision that this was the maximum period of time that the Government should wait to collect its revenues.

"Punctuality is important to the fiscal system, and these are sanctions to assure punctual as well as faithful performance of these duties." Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 367, 87 L.Ed. 418; United States of America v. Litman, 3 Cir., 1957, 246 F. 2d 206.

██ We hold that the force-out provision is a constitutional exercise of the taxing powers of the United States. Accordingly, the plaintiffs first claim for relief does not state a cause of action and should be dismissed.

The taxpayers urged that they should be able to recover under the second count of their complaint because the additional tax of $1.50 is an unapportioned direct tax on property; and if it is not such a tax the basic tax is a distillation tax, and the additional tax would have to be a tax on distillation and is so retroactive as to be unconstitutional.

The Government on the other hand maintains that the additional $1.50 tax per gallon is an additional excise that can be levied under the authority of Patton v. Brady, 1902, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713.

In Patton v. Brady, the Supreme Court pointed out that an excise is a tax laid without rule or principle upon consuma-

ble· articles upon the process of their manufacture and upon license to sell them. In determining whether this additional $1.50 is an excise or direct tax, we have as a guide the fact that taxes on whiskey have traditionally been held to be excises since the foundation of our Government and formerly in Great Britain. We have the decisions of our Supreme Court who have judicially held the tax on distilled spirits to be an excise, and finally we can apply the common meaning of the term, "excise", to the situation that we have before us and find that it is an excise.

■■■ The tax here is a tax on distilled spirits and is imposed by the statute at a period intermediate of the commencement of manufacture and the final consumption of the article. By the clear wording of the statute, there is a tax levied on the keeping of the distilled spirits in bond. What Congress has done has been to levy a tax of $10.50 on all distilled spirits in bond. Congress in effect has raised the excise tax on distilled spirits from $9 to $10.50 by charging a tax of $1.50 per gallon for the privilege of keeping the distilled spirits in a bonded warehouse where they may age if the owner so desires. It is true that the basic tax is a distillation tax which was $9 when the distilled spirits were produced. However, when the plaintiffs determined to place their spirits in a bonded warehouse for the purpose of aging and storage, and for the purpose of not paying the tax until the spirits were removed or not before 8 years, they obtained an advantage under the revenue laws. At that moment they knew that during the long history of an excise tax on whiskey that the rate of tax had been subject to change. History had also ·shown the necessity of these taxes applying to all whiskey to prevent windfall profits. In fact, the very nature· of the article necessitated, for the benefit of the industry, that these increases and reductions apply to both spirits to be distilled and whiskey already in bond. Congress had the author-

ity to levy an excise on this privilege and determined to tax that privilege. The tax is not a direct tax on property, nor is it a retroactive tax on distillation. It is merely another excise intermediate of the commencement of manufacture and the final consumption of the article. Accordingly, the plaintiffs' second cause of action must be dismissed as they failed to state a claim upon which relief can be granted.

In our determination of this case and consideration of the arguments advanced by counsel for the plaintiffs, we fully recognize that the plaintiffs have distinct problems, perhaps problems that were not envisioned or could not be foreseen when Congress originally enacted the internal revenue laws. The effect of the laws today and especially the so-called force-out provision may place the plaintiffs in an unfortunate situation in which they cannot compete with foreign producers and in effect are being discriminated against. However, if there be any discrimination against them, the orderly way to eliminate this would be by legislation and not a court decision. Action by Congress would be more accommodative, would afford the whole industry an opportunity to be heard, and an opportunity to assist in the formulation of any new legislation that might be necessary. The result of any new legislation·by Congress would be more likely to protect the industry and the public as a whole. Congressional action would be known in advance, and the industry could adjust to meet the changes in the law. While plaintiffs may have a complaint, their grievance ·should again be brought to the attention of the Congress who may in its wisdom adjust the internal revenue laws to meet the change of conditions. It is obvious that Congress has been previously alerted to the difficulties complained of by plaintiff. The existing laws we feel are constitutional. It follows then that since this tax is within the lawful power of Congress that any change must be made by Congress and not this Court.

### Order

And now, to wit, this 22nd day of July, 1957, it is Ordered and Directed that the motion of the defendant to dismiss the complaint should be and hereby is granted.