STATE OF NEBRASKA, APPELLEE, V. GERARDO GARZA, APPELLANT.
496 N.W.2d 448

Filed February 26, 1993.   No. S-91-736.

Jeffrey L. Hrouda for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Gerardo Garza appeals his district court convictions for possession of marijuana with intent to deliver (count I) and failure to affix the requisite tax stamps to marijuana or controlled substances in his possession (count II). On count I, a violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1989), Garza was sentenced to not less than 18 months' nor more than 3 years' incarceration, with 63 days credited for time served. On count II, a violation of Neb. Rev. Stat. § 77-4309 (Reissue 1990), Garza was sentenced to 1 year's imprisonment, the sentence to run concurrently with the count I sentence, and was required to pay the costs of prosecution. We affirm.

Pursuant to a search warrant based on an informant's tip, Garza's residence was searched on March 3, 1991. Police discovered 55 bags of marijuana in ¼-ounce lots, with a combined weight of over 10 ounces. No tax stamps were affixed to the bags as is required by Nebraska law.

Garza was charged with one count of possession of marijuana with intent to deliver and one count of failure to affix tax stamps to the marijuana. Prior to trial, Garza filed a motion to suppress the fruits of the search warrant and a motion to quash or dismiss, which challenged the constitutionality of Nebraska's Marijuana and Controlled Substances Tax Act, Neb. Rev. Stat. §§ 77-4301 to 77-4316 (Reissue 1990) (Tax Stamp Act or act). The district court overruled each motion.

At a bench trial, Garza renewed his objections regarding the constitutionality of the Tax Stamp Act and to the evidence

based on the search warrant. Garza's attacks on the act included arguments based on his constitutional right against self-incrimination and on Nebraska's constitutional provisions on tax valuation. Garza also objected regarding the validity of the search warrant, noting that the presenting officer had added language to the affidavit after being questioned by the judge who issued the warrant. Garza argued that the affidavit did not provide probable cause to issue the warrant. The court overruled each objection and found Garza guilty on both counts. Garza then appealed to this court.

The majority of Garza's assignments of error fall into two categories: those dealing with the district court's ruling on the motion to quash and those dealing with the court's ruling on the motion to suppress. With regard to the motion to quash, Garza asserts that the district court erred by overruling the motion because the Tax Stamp Act unconstitutionally (1) violates Garza's right against self-incrimination; (2) levies a personal property tax based on weight, rather than valuation; (3) creates an arbitrary classification of persons who must pay the tax, in violation of equal protection; (4) violates the Due Process Clause as it relates to the assessment of the tax and Garza's right to appeal; and (5) defines "dealer" in a way that is vague, overbroad, and conflicts with § 28-416.

Garza also argues that the district court erred by overruling his motion to suppress the fruits of the search warrant. Garza asserts that the investigating officer's affidavit failed to establish the reliability of the confidential informant and therefore did not provide probable cause to issue the warrant. Finally, Garza argues that the district court abused its discretion by sentencing Garza to imprisonment rather than to probation.

In his motion to quash, Garza did not include the constitutional challenges constituting assignments of error Nos. 3 and 4. At trial Garza objected to the admission of evidence relating to the Tax Stamp Act, renewing the constitutional challenges made in the motion to quash. He did not, however, make any additional arguments as to why the act was unconstitutional.

We have frequently stated, "In the absence of plain error, when an issue is raised for the first time in an appellate court,

the issue will be disregarded inasmuch as a trial court cannot commit error regarding an issue never presented and submitted for disposition in the trial court." *State v. Oldfield*, 236 Neb. 433, 438, 461 N.W.2d 554, 559 (1990) (citing *State v. Fletcher*, 221 Neb. 562, 378 N.W.2d 859 (1985)). Generally, a constitutional question will not be considered on appeal if not properly raised in the trial court. *Oldfield, supra.* We are not convinced by Garza's argument that a trial-level challenge to the constitutionality of a statute on one basis allows the challenger to assert different constitutional attacks on appeal.

While it is true that constitutionality is itself an issue, a mere blanket challenge is not specific enough to allow the trial court to make an informed ruling on the constitutional validity of a statute. Neither does a challenge based on one constitutional clause enable the court to adequately consider whether a statute violates some other constitutional provision. Objections and challenges that lack specificity rob the trial court of its role as a decisionmaker. It is not an appellate court's duty to assume that role in the first instance. To be properly raised at the appellate court level, the specific constitutional challenge must have been presented to the trial court for disposition.

Nor are we persuaded by Garza's argument that his third and fourth assignments of error were clearly evident from the record and constituted plain error. The interplay between the Tax Stamp Act and the Nebraska and U.S. Constitutions allows countless "arguments" about constitutional violations. None of those arguments, however, including those in assignments Nos. 3 and 4, are plainly evident. Garza failed to raise these challenges at the trial level; we will not address them here.

Garza argues that his motion to quash count II should have been granted because the Tax Stamp Act is unconstitutional. He first argues that the act violates his right to be free from compulsory self-incrimination, as guaranteed by the Fifth Amendment to the U.S. Constitution and Neb. Const. art. I, § 12 (hereinafter jointly referred to as Fifth Amendment protection). Garza argues that compliance with the act—i.e., receiving the stamps by self-presentation or by having them mailed to him—would force him to disclose, and thereby incriminate, himself as a possessor of illegal substances. This

challenge, although complex, has been previously raised in other jurisdictions that have enacted similar "drug tax" legislation.

The burden of showing a statute to be unconstitutional rests on the party challenging the statute. *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991). In addition, legislation is presumed to be constitutional, and all reasonable doubts will be resolved in favor of a statute's constitutionality. *Id.*

When analyzing whether a tax statute violates the Fifth Amendment, the principal issue is whether compliance with the statute confronts the taxpayer with a "real and appreciable" hazard of self-incrimination. *Marchetti v. United States*, 390 U.S. 39, 48, 88 S. Ct. 697, 19 L. Ed. 2d 889 (1968). In *Marchetti*, the U.S. Supreme Court created a three-part test for answering this issue. A statutory tax meeting each of the three elements of the test violates the constitutional right to be free from self-incrimination and cannot be enforced. See *id.*

Under the *Marchetti* test, a court must first determine whether the conduct being regulated is part of " 'an area permeated with criminal statutes' " and whether the individuals who engage in that conduct are part of a group " 'inherently suspect of criminal activities.' " 390 U.S. at 47 (quoting *Albertson v. SACB*, 382 U.S. 70, 86 S. Ct. 194, 15 L. Ed. 2d 165 (1965)). Secondly, the reviewing court must determine whether the statutory tax requires the taxpayer, under penalty of criminal prosecution, to disclose information "he might reasonably suppose would be available to prosecuting authorities." 390 U.S. at 48. Finally, the court must determine whether the required information would prove a "significant 'link in a chain' of evidence tending to establish his guilt." *Id.*

Applying the *Marchetti* test to the Nebraska Tax Stamp Act, we can easily dispose of the first part of the test. The possession, manufacture, and delivery of controlled substances is an area replete with criminal statutes, and those individuals who engage in such activities are inherently suspect of criminality. The State concedes this point.

The second and third parts of the test, however, are more

problematic. The Nebraska act explicitly states that the taxpayer need not disclose his name, address, or any other identifying information—thus calling into question whether any "significant" incriminating information is required (part 3 of the *Marchetti* test). See § 77-4304(1). Moreover, the act specifically addresses the use of taxpayer information for criminal prosecution. The act provides in part that

> [n]either the Tax Commissioner nor a public employee may reveal facts contained in a report required by [the Tax Stamp Act]. Information contained in any report required by the Tax Commissioner shall not be used against the dealer in any criminal proceeding, unless independently obtained, except in connection with a proceeding involving taxes due from the taxpayer making the report.

§ 77-4315. The act thus seems to avoid part 2 of the *Marchetti* test—that the taxpayer might "reasonably suppose" that information he provided would be available to prosecutors. Garza asserts, however, that § 77-4315, the act's confidentiality provision, is not broad enough to adequately protect taxpayers from criminal prosecution based on information they provide when complying with the act.

The effectiveness of the confidentiality provision is the essential element in our self-incrimination analysis. To our knowledge, eight cases have addressed Fifth Amendment challenges to controlled-substance taxing schemes. *Leary v. United States*, 395 U.S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969); *Briney v. State Dept. of Revenue*, 594 So. 2d 120 (Ala. Civ. App. 1991); *Harris v. State, Dept. of Revenue*, 563 So. 2d 97 (Fla. App. 1990); *State v. Smith*, 120 Idaho 77, 813 P.2d 888 (1991); *State v. Durrant*, 244 Kan. 522, 769 P.2d 1174 (1989), *cert. denied, Dressel et al. v. Kansas*, 492 U.S. 923, 109 S. Ct. 3254, 106 L. Ed. 2d 600; *Sisson v. Triplett*, 428 N.W.2d 565 (Minn. 1988); *State v. Roberts*, 384 N.W.2d 688 (S.D. 1986); *State v. Davis*, 787 P.2d 517 (Utah App. 1990). In these cases, only those statutory schemes that did not limit the dissemination of information to prosecuting authorities were held unconstitutional. See, *Leary, supra* (holding federal Marihuana Tax Act unconstitutional as violative of *Marchetti* because it required the taxpayer to identify himself and the

information was available to authorities on request); *Smith, supra* (holding unconstitutional a version of stamp tax act that did not provide confidentiality for taxpayer, but also noting that amended version, which did afford confidentiality, was constitutional); *Roberts, supra* (holding unconstitutional controlled substances tax act that allowed release of taxpayer information to authorities on request). See, also, *Grosso v. United States*, 390 U.S. 62, 88 S. Ct. 709, 19 L. Ed. 2d 906 (1968) (holding that federal wagering tax act was unconstitutional because the act did not impose explicit restrictions on use of information obtained through payment of the tax).

Garza attacks the effectiveness of the Tax Stamp Act's confidentiality provision on three grounds. Garza first argues that the confidentiality provision does not provide adequate protection because it only forbids use of information in "reports," and not other information that might be disclosed by challenging the amount of tax or by receiving the stamps. He next argues that the act provides no sanctions for public officials who violate the confidentiality requirement. Finally, he argues that incriminating information could be disclosed if, pursuant to the Tax Stamp Act, the Tax Commissioner files a tax lien or brings an action against a taxpayer who has not paid the required stamp tax. We address these arguments in the order presented.

Garza argues that when receiving the stamps, either in person or by mail, a taxpayer will be forced to incriminate himself by disclosing his appearance or mailing address—items perhaps not included in "reports." We agree that it is unclear from the act and its legislative history what information must be placed in a report. We do note, however, that the act neither requires the taxpayer himself to pick up the stamps nor requires that the stamps be mailed to the taxpayer's place of residence. The act requires only that the tax be paid. See §§ 77-4302 and 77-4304. In addition, as our later discussion will indicate, a taxpayer's mailing address is confidential if disclosed by a taxpayer complying with the act.

Garza's second argument relates to the lack of a penalty for violating the confidentiality provision. The act clearly prohibits

the use of "leaked" confidential information in a criminal prosecution against the taxpayer. See § 77-4315. Although the act provides no sanction for such a violation, this alone will not render the confidentiality provision inadequate. When confronted with similar tax-related Fifth Amendment challenges, the U.S. Supreme Court has indicated that the principal concern is whether the legislature intended the taxing scheme to disclose criminal transgressions. See, *Leary, supra*; *Marchetti, supra*. The confidentiality provisions in the Nebraska act make clear a legislative intent that the taxpayer's Fifth Amendment rights be protected. See §§ 77-4304 and 77-4315. If the protection granted by the statute is as broad in scope and effect as the Fifth Amendment, the taxpayer's right against self-incrimination will not be unconstitutionally compromised. See *Marchetti, supra*.

State statutes are presumed to be constitutional, and when a law is constitutionally suspect this court will endeavor to interpret the statute in a manner consistent with the Constitution. *In re Application U-2*, 226 Neb. 594, 413 N.W.2d 290 (1987). The Tax Stamp Act's confidentiality provision can be construed to grant protection coextensive with the right against self-incrimination. In *Marchetti*, *Leary*, and *Grosso*, the U.S. Supreme Court refused to save the offending statutes by placing judicial use restrictions on information required by the statutes. The Court reasoned that such restrictions would preclude effectuation of one of the integral purposes behind each of the statutes—providing information to prosecuting authorities. Unlike these federal statutes, however, the Nebraska act restricts the use of confidential information. See § 77-4315. The Legislature clearly did not enact the Tax Stamp Act to provide prosecutors with information about dealers. Therefore, placing use restrictions on information gained from compliance with the Nebraska act will not controvert legislative purposes.

Faced with a similar situation, the Supreme Court of Kansas stated:

> For a statutory grant of immunity to be coextensive with the privilege against self-incrimination, it must grant not only use immunity, or protection from the direct use of

compelled incriminatory information, but also derivative-use immunity, which prohibits use of any such information for investigatory purposes leading to other evidence of criminal activity. . . . We think it is obvious, and we so hold, that the legislature, by its enactment of [the Kansas act's confidentiality provision] intended to extend not only use immunity but also derivative-use immunity to any person complying with the act.

*State v. Durrant*, 244 Kan. 522, 534-35, 769 P.2d 1174, 1183 (1989), *cert denied, Dressel et al. v. Kansas*, 492 U.S. 923, 109 S. Ct. 3254, 106 L. Ed. 2d 600.

Like the Kansas lawmakers, the Nebraska Legislature included a confidentiality provision in the Tax Stamp Act—obviously intending to protect the Fifth Amendment right of taxpayers who complied with the act. The Legislature further indicated this intention by providing that when paying the tax, taxpayers need not disclose their name, address, Social Security number, or other identifying information. See § 77-4304(1). We therefore hold that any written information received by the Tax Commissioner from a taxpayer complying with the Tax Stamp Act shall be considered part of a report and is therefore "directly" confidential under § 77-4315. We further hold that any evidence obtained through the use of information made confidential by § 77-4315 is "derivatively" confidential, including information gained when the taxpayer appeals the amount of the tax or penalty. See § 77-4314. All such information, whether directly or derivatively confidential, is inadmissible in any criminal prosecution against the taxpayer, except when independently obtained or when being used in a prosecution to enforce the Tax Stamp Act itself. See § 77-4315.

We finally address Garza's last confidentiality-based argument, that incriminating information might be disclosed in an action for delinquent taxes or pursuant to the filing of a tax lien, which is provided for in § 77-4310. We first note that a tax lien may be filed only when the taxpayer "*neglects or refuses* to pay such . . . fee *after demand*." (Emphasis supplied.) Neb. Rev. Stat. § 77-3904(1) (Reissue 1990). In addition, we note that the Fifth Amendment privilege may not be asserted if the taxpayer is afforded other protection as broad in scope and

effect as the privilege itself. *Marchetti, supra*. In light of our holding that information disclosed *by complying* with the Tax Stamp Act is confidential, a taxpayer cannot refuse to comply with the act based on the right against compulsory self-incrimination. See *id*. Noncompliance with a taxing scheme based on a reasonable fear of self-incrimination is permissible; noncompliance based on a dislike of paying taxes is not. We therefore hold that if a taxpayer, by unjustified nonpayment of the tax due under the Tax Stamp Act, forces the Tax Commissioner to file a tax lien or bring an action for unpaid taxes, disclosures resulting from the filing will not be confidential. See, also, § 77-4315 (providing that information in a report may be used "in connection with a proceeding involving taxes due from the taxpayer making the report").

The Nebraska Tax Stamp Act, construed to grant derivative-use immunity, provides protection to taxpayers coextensive with the Fifth Amendment protection against self-incrimination. Garza cannot legitimately claim that compliance with the act would force him to disclose significantly incriminating information he might reasonably suppose would be available to prosecuting authorities. His failure to comply with the act on this ground was not constitutionally permissible.

Garza next argues that the district court improperly overruled his motion to quash because the Tax Stamp Act levies a personal property tax based on weight rather than value, in contravention of Neb. Const. art. VIII, § 1. We disagree.

Our initial task is to determine what type of tax is levied by the Tax Stamp Act. Several sections of the act refer to a tax "on" or "upon" marijuana and controlled substances. See §§ 77-4302, 77-4303, and 77-4305. However, this does not, of itself, make the tax a property tax. Other sections of the act indicate that what is being taxed is the dealer's use of the substances. Section 77-4301(2) provides that "[d]ealer shall mean a person who, in violation of Nebraska law, *manufactures, produces, ships, transports, or imports* into Nebraska, or in any manner *acquires or possesses* six or more ounces of marijuana" (emphasis supplied), and § 77-4302 provides that "[n]o dealer may possess marijuana or controlled

substances upon which a tax is imposed . . . unless the tax has been paid . . . ."

Regarding statutory interpretation, we have stated, " 'As a series or collection of statutes pertaining to a certain subject matter, statutory components of an act, which are in pari materia, may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible.' " *Indian Hills Comm. Ch. v. County Bd. of Equal.*, 226 Neb. 510, 518, 412 N.W.2d 459, 465 (1987) (quoting *Wounded Shield v. Gunter*, 225 Neb. 327, 405 N.W.2d 9 (1987)).

We begin our analysis by contrasting the definitions of "property" and "excise" taxes. Black's Law Dictionary (6th ed. 1990) provides the following definitions: **"Excise tax.** A tax imposed on the performance of an act [or] the engaging in an occupation . . . . A tax on the manufacture, sale, or use of goods or on the carrying on of an occupation or activity . . . ." *Id*. at 563. **"Property tax.** An *ad valorem* tax . . . on the value of real or personal property that the taxpayer owns on a specified date. The tax is generally expressed as a uniform rate per thousand of valuation." *Id*. at 1218.

We have previously held that a tax imposed on the doing of an act, including a business or license tax, is an excise tax and not a property tax. *State v. Galyen*, 221 Neb. 497, 378 N.W.2d 182 (1985). In *Burke v. Bass*, 123 Neb. 297, 242 N.W. 606 (1932), we addressed a statute which required "dealers" —persons who imported or produced fuel for use or distribution in Nebraska—to pay a tax of 4 cents per gallon on the fuel. See *Galyen, supra*. We held that the tax was an excise tax on the sale and use of the fuel. *Burke, supra*. See, also, *Galyen, supra* (holding that a tax of 25 cents per head of cattle sold was an excise tax); *Licking v. Hays Lumber Co.*, 146 Neb. 240, 19 N.W.2d 148 (1945) (holding tax imposed as an annual charge on the right to maintain corporate existence, although computed based on the amount of capital stock, was an excise tax).

The tax imposed by the Tax Stamp Act does not meet the express definition of a property tax. Property taxes, by their

very nature, target the *value* of an item. See Black's Law Dictionary, *supra*. The tax levied by the Tax Stamp Act, however, targets individuals who put the substances to certain uses, basing its rate on the quantity involved, not the value. See §§ 77-4301 to 77-4303. Garza's argument, viewed in light of the aforementioned definitions, is non sequitur: he asserts that because the Tax Stamp Act levies a tax based on weight, not value, it is an invalid property tax. The obvious answer to this argument is that if the tax is not based on value, it is not a property tax at all.

We find that the Tax Stamp Act levies an excise tax. The Tax Stamp Act clearly targets the use or sale of the substances; the substances themselves are relevant only as a basis for computation of the tax. First, the tax levied by the act applies only to dealers, who are defined according to their actions. See §§ 77-4301(2) and 77-4302. Second, the tax applies only to possession of substances in excess of a certain amount, e.g., 6 or more ounces of marijuana. § 77-4301(2). The tax obviously aims at the activities of a certain group—individuals holding relatively large amounts of the substances—who will engage in either the distribution or large-scale consumption of the substances. If the tax was on the substances themselves, rather than on their use, the tax would apply to any individual who possessed any amount of the substances.

Our finding is consistent with the findings of courts reviewing similar taxing schemes. For example, in *Burke, supra*, we held the gasoline tax to be an excise tax despite the tax's being levied on each gallon of fuel. We determined that the dispositive factor was that the tax aimed at dealers' sale and use of the fuel. The Tax Stamp Act similarly applies to dealers who produce, import, or acquire the substances. See §§ 77-4301 and 77-4302.

Even more persuasive is *Patton v. Brady, Executrix*, 184 U.S. 608, 22 S. Ct. 493, 46 L. Ed. 713 (1902), which held that the federal tax on tobacco products (precursor of 26 U.S.C. § 5701 et seq. (1988)) was an excise tax. The applicable statute levied a per-pound tax on " 'tobacco and snuff, however prepared, manufactured and sold, for consumption or sale. . . .' " 184 U.S. at 616.

In holding that the statute imposed an excise tax, the U.S. Supreme Court stated:

> Ever since the early part of the civil war there has been a body of legislation . . . by which, upon goods intended for consumption, *excises have been imposed in different forms at some time intermediate the beginning of manufacture or production and the act of consumption.* Among the articles thus subjected to those excises have been liquors and tobacco, appropriately selected therefor on the ground that they are not a part of the essential food supply of the nation, but are among its comforts and luxuries.

184 U.S. at 617. See, also, *Schenley Distillers v. United States,* 153 F. Supp. 898 (W.D. Pa. 1957), *aff'd* 255 F.2d 334, *cert. denied* 358 U.S. 835, 79 S. Ct. 57, 3 L. Ed. 2d 72 (1958) (holding the federal tax on distilled spirits to be an excise tax).

Having determined that the act imposes an excise tax, we now turn to the relevant constitutional provisions. Neb. Const. art. VIII, § 1, provided, in pertinent part, that "[t]axes shall be levied *by valuation* uniformly and proportionately upon all tangible property and franchises." (Emphasis supplied.) In *Galyen,* 221 Neb. at 502, 378 N.W.2d at 186, we stated, "[T]he requirements of article VIII, § 1, are not applicable to an excise tax." We therefore held in that case that the "uniformly and proportionately" language was inapplicable to excise taxes. Under the same reasoning, the "valuation" provisions of art. VIII, § 1, do not apply to excise taxes. The tax imposed by the Tax Stamp Act is an excise tax and therefore need not be levied by valuation. Garza's second assignment of error is without merit.

Garza's final assignment of error relating to the motion to quash asserts that the Tax Stamp Act unconstitutionally defines "dealer" in a way that is vague, is overbroad, and conflicts with § 28-416(6). With regard to this assignment of error, Garza's brief discusses only the alleged conflict between §§ 77-4301(2) and 28-416(6). This court will address only issues that are both assigned as error and discussed in the brief of the party alleging prejudicial error. *Maack v. School Dist. of Lincoln,* 241 Neb. 847, 491 N.W.2d 341 (1992). We thus proceed to the alleged

conflict between the statutes.

Under § 77-4301(2), a "dealer" is defined as one "who, in violation of Nebraska law, manufactures, produces, ships, transports, or imports into Nebraska, or in any manner acquires or possesses six or more ounces of marijuana . . . ." Such an individual is subject to a felony conviction for failing to affix the required tax stamps to the marijuana. § 77-4309.

Garza argues that § 77-4301(2) conflicts with § 28-416(6), which makes it a misdemeanor to knowingly or intentionally possess marijuana weighing over 1 ounce but not over 1 pound. Garza asserts that the two sections provide different penal consequences for the same conduct and that therefore § 77-4301(2) is arbitrary, capricious, vague, and overbroad.

Garza's argument is untenable. We agree that the sections do classify the offenses differently; however, the sections address different types of misconduct. Section 28-416 makes it a misdemeanor to *possess* marijuana of a certain amount. Section 77-4301(2), in conjunction with § 77-4309, makes it a felony to possess marijuana *"without affixing the official stamp, label, or other indicium."* (Emphasis supplied.) One statute penalizes possession of a drug, the other penalizes the failure to pay taxes. The two sections are not, as Garza asserts, inconsistent.

Garza next asserts that the trial court erred by denying his motion to suppress the evidence obtained when his residence was searched. He argues that the presenting officer's affidavit did not contain sufficient indication of the confidential informant's reliability or credibility and therefore failed to establish probable cause to issue the search warrant. Garza notes that the affidavit contains handwritten language that was added prior to the signing of the warrant. At trial the district court inquired about this language:

BY THE COURT:

Q. Deputy, the affidavit upon which the search warrant was issued has the language written in, "I have received information from this informant before which was proven reliable information." Is that true?

A. Yes, it is.

Q. And you say [the issuing judge] suggested that you

might have some language to that effect?

A. Yes, he did. He asked if I had received information from this informant before. I routinely place that in the affidavit, and for some reason it was overlooked in this affidavit.

Q. It is, in fact, a requirement, isn't it?

A. Yes.

. . . .

Q. So although [the issuing judge] may have suggested that this language be inserted, it was, in fact, language that you inadvertently omitted?

A. Yes.

The district court denied the motion to suppress, ruling that the affidavit established probable cause under *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). In reaching this ruling, the court held that the affidavit sufficiently established the reliability of the informant and that the issuing judge's inquiry about previous dealings with the informant did not taint the affidavit.

When reviewing a trial court's ruling on a motion to suppress, this court will uphold a trial court's findings of fact in the ruling unless those facts are clearly erroneous. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992). In deciding whether the trial court's findings on a motion to suppress are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *Id.*; *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992).

The district court correctly employed the *Gates* "totality of the circumstances" test to determine whether an affidavit sufficiently supports a search warrant. We have formulated this test as such:

In evaluating probable cause for the issuance of a search warrant, the magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular place. . . . The duty of the reviewing court is to ensure that the issuing magistrate had a substantial basis for determining that probable cause existed.

(Citations omitted.) *State v. Groves*, 239 Neb. 660, 665, 477 N.W.2d 789, 794-95 (1991). In addition, a search pursuant to a warrant is presumed valid. *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987), *cert. denied* 484 U.S. 863, 108 S. Ct. 180, 98 L. Ed. 2d 133.

We agree with the district court that the issuing judge's inquiry about past dealings with the informant did not taint the affidavit. Past dealings with an informant are a relevant factor under the "totality of the circumstances" test. See, *Groves, supra*; *State v. Patterson*, 237 Neb. 198, 465 N.W.2d 743 (1991). The issuing judge correctly recognized the inadvertent omission of the "reliability" language and properly inquired further on the matter. The questioning did not diminish the level of proof required in the affidavit and thus did not taint the affidavit.

Even without the handwritten language, however, the affidavit provided the magistrate with adequate evidence of the informant's "veracity and basis of knowledge." The affidavit indicated that in addition to the information about Garza's possession of marijuana, the informant had conveyed other information which the deputy corroborated prior to seeking the warrant. First, the informant reported that while in a named individual's apartment, he had witnessed marijuana being smoked and sold, information the officer corroborated by smelling marijuana on the informant after he left the apartment and by verifying the name of the apartment's resident. Second, the informant had accurately provided Garza's address. Finally, the informant had stated that Garza would go to Texas around March 1 to acquire the marijuana, information corroborated when a Texas deputy called the Norfolk police on February 28, requesting vehicle information on Garza's automobile.

The affidavit set forth sufficient facts about the informant's veracity and basis of knowledge, when combined with the other circumstances, to provide the issuing judge with a substantial basis for finding probable cause. The district court did not err

by overruling Garza's motion to suppress.

Lastly, Garza argues that the district court erred by sentencing him to not less than 18 months' nor more than 3 years' incarceration. Again, we disagree.

Under § 28-416, any person who knowingly or intentionally possesses marijuana with intent to deliver is guilty of a Class III felony. See, also, Neb. Rev. Stat. 28-405 (Reissue 1989). Such a person may be sentenced to a term of 1 to 20 years' imprisonment. Neb. Rev. Stat. § 28-105(1) (Reissue 1989).

We have frequently stated that "[a] sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion." *State v. Smith*, 240 Neb. 97, 102, 480 N.W.2d 705, 708 (1992). After considering the evidence, the district court judge ruled that a lesser sentence would depreciate the seriousness of the crime or promote disrespect for the law. We find no abuse in the court's determination of Garza's sentence.

The Nebraska Tax Stamp Act does not violate Garza's right to be free from self-incrimination; neither does the act violate Neb. Const. art. VIII, § 1, or conflict with § 28-416(6). The district court correctly overruled Garza's motion to quash. The court was also correct in overruling Garza's motion to suppress evidence from the search of his residence. Finally, the court did not abuse its discretion in sentencing Garza. We therefore affirm Garza's convictions and sentences.

AFFIRMED.