STATE OF NEBRASKA, APPELLEE, V. RANDY R. DETWEILER,
APPELLANT.
STATE OF NEBRASKA, APPELLANT, V. RANDY R. DETWEILER,
APPELLEE.
STATE OF NEBRASKA, APPELLEE, V. LUCINDA H. DETWEILER,
APPELLANT.
544 N.W.2d 83

Filed March 1, 1996.   Nos. S–95–420, S–95–503, S–95–585, S–95–520.

David L. Kimble, Seward County Public Defender, for Randy R. Detweiler.

Michael G. Mullally for Lucinda H. Detweiler.

C. Jo Petersen, Seward County Attorney, for State (cases Nos. S-95-420, S-95-503, S-95-585).

Don Stenberg, Attorney General, and Joseph P. Loudon for State (case No. S-95-520).

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

## I. INTRODUCTION

Randy R. and Lucinda H. Detweiler were convicted in a bench trial of manufacturing a controlled substance and possession of a controlled substance with intent to deliver. In addition, they were each charged with failure to affix a drug tax stamp. The record demonstrates that the district court dismissed this charge against Randy, but the record is silent as to the charge against Lucinda. Randy and Lucinda appeal their convictions, which appeals were docketed as Nos. S-95-420 and S-95-520 respectively. The State appeals the dismissal of the drug tax stamp charge against Randy, which appeal was

docketed as No. S–95–585. The State also appeals the sentence given to Randy as excessively lenient, which appeal was docketed as No. S–95–503.

## II. SCOPE OF REVIEW

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

In evaluating probable cause for the issuance of a search warrant, the magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Grimes, supra*; *State v. Garza*, 242 Neb. 573, 496 N.W.2d 448 (1993).

When the State appeals from a sentence, contending that it is excessively lenient, an appellate court reviews the record for an abuse of discretion, and a grant of probation will not be disturbed unless there has been an abuse of discretion by the sentencing court. *State v. Foral*, 236 Neb. 597, 462 N.W.2d 626 (1990).

## III. FACTS

On June 24, 1993, Patrick Dorcey, deputy sheriff of the Seward County Sheriff's Department, was told by a confidential informant (CI) that a friend of the CI's had taken photographs inside the Detweiler residence of an "elaborate marijuana growing operation, with lights and a watering system." The CI believed the photographs were taken on June 19 in the upstairs portion of the Detweiler house in a room with a covered north window. The CI also told Dorcey that he had seen individuals who used drugs frequenting the Detweiler residence on numerous occasions, and the CI provided those names to Dorcey.

Dorcey told the CI to instruct his friend to supply Dorcey with the photographs and to make a report. The CI informed Dorcey that the friend did not wish to become involved and

would not deal with Dorcey directly. The CI was instructed to send the photographs himself or to have his friend send the photographs directly to Dorcey and make an anonymous report regarding the photographs to Crimestoppers.

Thereafter, an envelope containing photographs matching the description provided by the CI arrived at the Seward County Sheriff's Department. The envelope was sent to Dorcey, but did not bear a return address. The photographs showed several large marijuana plants growing in pots inside a room with covered windows, as well as marijuana hanging to dry.

Subsequently, an individual called Seward County Crimestoppers, acknowledged sending the photographs to Dorcey, and requested a Crimestoppers identification number. On July 3, 1993, the individual again called Crimestoppers, described the photographs, and stated that the photographs were taken by the caller in an upstairs room of the Detweiler residence on June 19. The caller had "observed many different people constantly going in and out of the house and lots of different cars at the Detweiler residence."

Dorcey prepared an affidavit and motion for a search warrant on July 7, 1993, in which he conveyed the information provided by the CI and the Crimestoppers caller, as well as additional information gathered by independent investigation. As a result, a search warrant was issued. That same day, Dorcey and other officers served the warrant and seized a large number of items from locations throughout the house, including marijuana in various forms, drug paraphernalia, a triple–beam scale, a number of lights, and a crude irrigation system. The Detweilers were arrested and charged with three counts each: (1) manufacturing a controlled substance, to wit: marijuana, a Class III felony; (2) possession of marijuana with intent to deliver, a Class III felony; and (3) failure to affix a drug tax stamp, a Class IV felony.

Prior to trial, the Detweilers argued that convictions for possession with intent to deliver and failure to affix a drug tax stamp would violate their Fifth Amendment rights against double jeopardy under *Department of Revenue of Montana v. Kurth Ranch*, ____ U.S. ____, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994). The Detweilers also moved to suppress the evidence

seized pursuant to the search warrant. The district court overruled the motions to suppress, but withheld ruling on the double jeopardy issue until sentencing.

Following a bench trial, the Detweilers were convicted of manufacturing a controlled substance and possession with intent to deliver. Prior to sentencing, the district court dismissed the charge of failure to affix a drug tax stamp against Randy Detweiler. No dismissal of the drug tax stamp charge appears in the record regarding Lucinda Detweiler. Randy was sentenced to 4 years' probation, including a jail term of 180 days, with extensive probation restrictions. Lucinda was sentenced to 4 years' probation.

## IV. ASSIGNMENTS OF ERROR

In their appeals, the Detweilers assert that the district court erred (1) in overruling their motions to suppress physical evidence seized at their residence pursuant to an invalid search warrant and (2) in admitting into evidence those items seized at the residence pursuant to the invalid search warrant.

In its appeals, the State asserts that the district court erred in dismissing the drug tax stamp charge against Randy Detweiler and abused its discretion in granting him probation.

## V. ANALYSIS

### 1. MOTION TO SUPPRESS

The Detweilers argue that the affidavit upon which the search warrant was issued was insufficient to provide probable cause to issue the warrant and that, therefore, the evidence seized during the search of their residence should be suppressed. The affidavit relied on information provided to the police by two informants: a confidential informant and a Crimestoppers caller.

In reviewing the strength of an affidavit as a basis for finding probable cause to issue a search warrant, we have adopted the "totality of the circumstances" rule established by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Under this standard, the question is whether, under the totality of the circumstances, the issuing magistrate had a "substantial basis" for finding that the affidavit established probable cause. *State v. Duff*, 226 Neb.

567, 412 N.W.2d 843 (1987). In *Gates*, the Court described this standard as follows:

> [A]fter–the–fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." . . . "A grudging or negative attitude by reviewing courts toward warrants" . . . is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." . . .
>
> . . . Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable–cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.

462 U.S. at 236.

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994). We therefore consider the sufficiency of the information received and the reliability of the information.

(a) Basis for Affidavit's Allegations of Criminal Activity

The affidavit states that Dorcey was told by the CI that a friend of his had taken photographs of the inside of the Detweilers' home on June 19, 1993, and that the photographs depicted an "elaborate marijuana growing operation, with lights and a watering system." The growing operation was said to be in the upstairs of the house in a room with a covered window, and the CI stated that shortly before the photographs were taken, the Detweiler residence " 'looked like a jungle.' "

However, the CI stated that when the photographs were taken, there "were not as many plants in the room as there had been prior to the photos being taken, but that there were some plants that were just getting started in pots." The CI further stated that he had seen individuals he knew to be drug users at the Detweiler residence on a number of occasions, and he informed Dorcey of their names. Although the identity of the CI's friend was not disclosed, the friend sent the photographs to Dorcey.

Dorcey told the CI to have his friend call Crimestoppers to make a report regarding the Detweilers. The factual basis to support the affidavit was ultimately provided by the Crimestoppers caller. The caller stated that on June 19, 1993, he had taken a number of photographs depicting a marijuana growing operation inside the Detweilers' home. The caller correctly stated that the photographs were of a number of marijuana plants and that one of the photographs showed marijuana plants hanging to dry. The photographs were taken in an upstairs room, and the caller had personally "observed many different people constantly going in and out of the [Detweiler] house and lots of different cars at the Detweiler residence."

### (b) Credibility of Information in Affidavit

The reliability of an informant may be established by showing that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992).

In determining the relative reliability of an informant's information to demonstrate probable cause to issue a search warrant, we have distinguished between the ordinary "confidential informant" and the "citizen informant." See *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988). We described this distinction as follows:

" 'When considering the sufficiency of probable cause based on information supplied by an informant, it is important to distinguish the police tipster, who acts for

money, leniency, or some other selfish purpose, from the citizen informer, whose only motive is to help law officers in the suppression of crime.

" . . . .

" 'In the latter the rule of prior reliability is considerably relaxed for several reasons. In the first place the citizen informer has rarely had any earlier experience in reporting suspected criminal activity. Furthermore, unlike the professional informant, he is without motive to exaggerate, falsify or distort the facts to serve his own ends.' "

*Id.* at 822, 420 N.W.2d at 304. Accord *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991).

"[A]n untested citizen informant who has personally observed the commission of a crime is presumptively reliable." *State v. Payne*, 201 Neb. 665, 670, 271 N.W.2d 350, 352 (1978). "An anonymous tipster's 'explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the] tip to greater weight than might otherwise be the case.' " *State v. Vermuele*, 241 Neb. 923, 931–32, 492 N.W.2d 24, 31 (1992) (quoting *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

The Detweilers argue that the Crimestoppers caller was not a citizen informant because the affidavit did not set forth the circumstances by which the caller's status as a citizen informant may be inferred. The Detweilers claim the Crimestoppers caller was not acting "openly" in aid of law enforcement and that the caller does not meet the definition of a citizen informant. We disagree.

In *State v. Duff*, 226 Neb. 567, 571, 412 N.W.2d 843, 846 (1987), we referred to a definition given by other courts of a citizen informant as " 'a citizen who purports to . . . have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. . . .' " We have not previously adopted a requirement that a citizen informant cannot remain anonymous, and we decline to do so. Reliability may appear by the very nature of the circumstances under which the incriminating information became known. *Id.*

The affidavit set forth a significant basis for finding that the Crimestoppers caller was a "citizen informant." The caller made an anonymous report to Crimestoppers, claiming to have taken photographs of a crime in progress. The caller sent the photographs to the police and then verified their contents. The photographs and the caller's description of them provide a detailed description of the crime that the caller alleged to have personally witnessed.

Moreover, there is no evidence that the caller had any selfish motivation for working with the police, such as promises of leniency or financial benefit. There is no indication that the caller had any incentive to exaggerate the information made available to Dorcey in pursuit of personal ends. Dorcey averred in his affidavit that the photographs matched the description provided by the caller. In addition, Dorcey corroborated the caller's claim that the Detweiler home had a second story by independent investigation and verified that the windows in a room on the north side of the house, which the Crimestoppers caller identified as the "growing room," were covered.

### (c) Determination

In evaluating probable cause for the issuance of a search warrant, the magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Garza*, 242 Neb. 573, 496 N.W.2d 448 (1993). Given the totality of the circumstances, probable cause existed to justify the issuance of the search warrant in the present case.

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Grimes, supra*; *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994). The issuance of the warrant was proper, and the trial court did not err in refusing to suppress or in admitting the evidence obtained during the search of the Detweiler residence.

## 2. Double Jeopardy

The Detweilers each argued that their charge of failure to affix a drug tax stamp should be dismissed, claiming that convictions for possession with intent to deliver and failure to affix a drug tax stamp would violate their Fifth Amendment right against double jeopardy. The district court dismissed the charge of failure to affix a drug tax stamp against Randy. The court cited *Department of Revenue of Montana v. Kurth Ranch*, ____ U.S. ____, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994), in its order of dismissal.

Pursuant to Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 1994), the county attorney for Seward County applied for leave to docket an appeal on the double jeopardy issue. Under § 29-2315.01, the State may request review of an adverse decision or ruling in a criminal case after a final order or judgment in the criminal case has been entered. The purpose of this procedure is to provide an authoritative exposition of the law to serve as precedent in future cases. See *State v. Jennings*, 195 Neb. 434, 238 N.W.2d 477 (1976). The scope of such an appeal, however, is limited.

Under Neb. Rev. Stat. § 29-2316 (Cum. Supp. 1994), the judgment of the court in any action taken under § 29-2315.01

> shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the appellate court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state.

In those cases where our decision establishes that the final order of the trial court was erroneous and the defendant was not placed legally in jeopardy prior to the entry of such erroneous order, § 29-2316 authorizes the trial court to "upon application of the county attorney issue its warrant for the rearrest of the defendant and the cause against him or her shall thereupon proceed in accordance with the law as determined by the decision of the appellate court."

It is well established in Nebraska that under Neb. Const. art. I, § 12, jeopardy attaches when a judge, hearing a case without a jury, begins to hear evidence as to the guilt of the defendant.

*State v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988); *State v. Chamley*, 223 Neb. 614, 391 N.W.2d 99 (1986). The district court withheld determination on the motion to dismiss until the time of sentencing. At trial, the State presented evidence on the failure to affix a drug tax stamp charge, including evidence that the marijuana seized at the Detweiler residence did not bear a drug tax stamp; therefore, jeopardy attached. Thus, we review the court's legal conclusion pursuant to § 29-2316 for the purpose of instructing parties as to the law for pending and subsequent cases.

While the U.S. Supreme Court determined in *Kurth Ranch* that Montana's Dangerous Drug Tax Act violated the defendants' rights not to be placed in double jeopardy, the Court's analysis specifically excluded such a holding with respect to the facts of the case at bar. The enforcement of the Montana drug tax was pursued in a separate and distinct proceeding from the criminal action against the defendants. As the majority noted in footnote 21, the Montana statute did not require the Court to "comment on the permissibility of 'multiple punishments' imposed *in the same proceeding*." (Emphasis supplied.) *Kurth Ranch*, 114 S. Ct. at 1947.

The Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989); *State v. Stubblefield, ante* p. 436, 543 N.W.2d 743 (1996). Here, we consider whether the successful prosecution of Randy Detweiler for both the possession with intent to deliver charge and the drug tax stamp charge would lead to multiple punishments for the same offense.

In *Missouri v. Hunter*, 459 U.S. 359, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983), the Court considered whether a defendant could simultaneously be charged with the crimes of "armed robbery" and "armed criminal action" without violating the Double Jeopardy Clause. The armed robbery charge required proof of every fact required to prove the armed criminal action charge, and the armed criminal action charge did not require proof of any element not required for proving armed robbery.

The defendant claimed that the crime of armed criminal action appeared to be a lesser–included offense of armed robbery and that prosecution for both charges should therefore be considered double jeopardy under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

The Court rejected this argument and explained that when two offenses are tried in the same proceeding, the only double jeopardy issue is whether convictions on both charges would constitute multiple punishment for the same offense. The determination of whether such convictions would lead to a multiple punishment, however, depends on whether the legislature that designed the criminal statutory scheme intended that cumulative sentences be applied for conviction on both offenses. If the legislature intended that defendants be punished cumulatively under both charges and the sentences for both charges are imposed in a single trial, the Double Jeopardy Clause is not offended. *Missouri v. Hunter, supra*.

The Court explained that the *Blockburger* test is a rule of statutory construction. The purpose of the test is to prevent double punishment in a situation where the legislature has in fact intended to provide a single punishment for the offense. The *Blockburger* test is inapplicable in those cases where the legislature has intended to punish both offenses cumulatively.

> [S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. . . .
>
> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Hunter*, 459 U.S. at 368–69. In *Hunter*, the armed criminal action statutes stated that " '[t]he punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through

the use, assistance, or aid of a dangerous or deadly weapon. . . .' " *Hunter*, 459 U.S. at 362. Thus, the Court found that there was no double jeopardy violation.

The same analysis applies to the drug tax stamp statute, Neb. Rev. Stat. § 77–4309 (Cum. Supp. 1994), which states in part:

> A dealer distributing or possessing marijuana or a controlled substance without affixing the official stamp, label, or other indicium shall be guilty of a Class IV felony. *Notwithstanding any other provision of the criminal laws of this state*, an indictment may be found and filed or an information or complaint filed upon any criminal offense specified in this section in the proper court within six years after the commission of such offense.

(Emphasis supplied.) Section 77–4309 demonstrates that the Legislature recognized that a person might be charged with a criminal offense with a separately applicable statute of limitations and demonstrates that the Legislature intended the drug tax stamp violation to remain an independent offense from any criminal prosecution for a drug crime.

In addition, the drug tax stamp requirement applies to any "dealer," which Neb. Rev. Stat. § 77–4301 (Cum. Supp. 1994) defines as one who, "*in violation of Nebraska law*, manufactures, produces, ships, transports, or imports into Nebraska or in any manner acquires or possesses six or more ounces of marijuana . . . ." (Emphasis supplied.) When the Legislature created additional penalties for the crime of failure to affix a drug tax stamp, the Legislature recognized that the drug tax stamp requirement would apply against one who is also in violation of a separate criminal law. The Legislature intended that defendants would be subject to cumulative punishments for the separate offenses of possession with intent to deliver and failure to affix a drug tax stamp. Where a legislature has demonstrated an intent to permit cumulative punishments, the Double Jeopardy Clause is not violated. See *Department of Revenue of Montana v. Kurth Ranch*, ____ U.S. ____, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994). The Court recognized in *Kurth Ranch* that "Montana no doubt could collect its tax on the possession of marijuana, for example, if it had not previously punished the taxpayer for the same offense, or, indeed, if it had

assessed the tax in the same proceeding that resulted in his conviction." 114 S. Ct. at 1945, citing *Missouri v. Hunter*, 459 U.S. 359, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983).

The State's exception to the dismissal of the failure to affix a drug tax stamp charge against Randy Detweiler is sustained. We make no determination as to the disposition of this charge against Lucinda Detweiler. The record does not demonstrate that the district court entered an order dismissing the drug tax stamp charge against Lucinda or that the court entered a judgment on the drug tax stamp charge with respect to her.

### 3. LENIENCY OF SENTENCE

The State appeals Randy Detweiler's sentence as excessively lenient, pursuant to Neb. Rev. Stat. § 29-2320 (Cum. Supp. 1994). The district court sentenced him to 4 years' probation, including 180 days' incarceration. The court placed significant limitations on his personal behavior during the period of probation and ordered substance abuse monitoring and chemical dependency evaluation and treatment as required.

When the State appeals from a sentence, contending that it is excessively lenient, an appellate court reviews the record for an abuse of discretion, and a grant of probation will not be disturbed unless there has been an abuse of discretion by the sentencing court. *State v. Foral*, 236 Neb. 597, 462 N.W.2d 626 (1990).

Randy Detweiler was sentenced to 4 years of restrictive probation, extensive monitoring, and treatment for substance abuse. The probationary term includes 180 days of incarceration. This sentence was not clearly untenable given the circumstances, and we cannot say that the district court abused its discretion.

### VI. CONCLUSION

The district court's judgments of conviction and sentences are affirmed. The court's dismissal of the failure to affix a drug tax stamp charge against Randy Detweiler was incorrect, and the State's exception is sustained.

JUDGMENTS IN NOS. S-95-420, S-95-503, AND S-95-520 AFFIRMED.
EXCEPTION SUSTAINED IN NO. S-95-585.