STATE OF NEBRASKA, APPELLEE, V.
ARLYN P. ILDEFONSO, APPELLANT.
634 N.W. 2d 252

Filed October 5, 2001.    No. S-00-1024.

Thomas C. Riley, Douglas County Public Defender, and Leslie E. Cavanaugh for appellant.

Don Stenberg, Attorney General, and Scott G. Gunem for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Arlyn P. Ildefonso appeals from his convictions for first degree murder and use of a firearm to commit a felony. Ildefonso was charged with killing Carr Hume on September 13, 1999. After a jury convicted Ildefonso on both charges, he was sentenced to life in prison without parole for first degree murder and to a consecutive sentence of 40 to 45 years in prison for the use of a firearm. He asserts on appeal that his motion to suppress should have been granted and that he received ineffective assistance of counsel at trial.

## SCOPE OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001), *cert. denied* 533 U.S. 952, 121 S. Ct. 2596, 150 L. Ed. 2d 754.

■ In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001).

## FACTS

At approximately 4 a.m. on September 13, 1999, Omaha police found the body of Hume, a retired minister, lying in the street and on the curb in front of 2527 South 42d Street. Hume had been shot in the right side of his face. His hands were still in the pockets of his sports coat, and his wallet contained $1,029. The blood evidence indicated that Hume had been shot at that location.

Based on the report of an informant, two suspects were identified and arrested. While preparing to interview one of the suspects, Officer Melvin McCowen of the Omaha Police Department received an anonymous call stating that the police had arrested the wrong persons. The caller, subsequently identified as Amy Taylor, said that Ildefonso was responsible for the shooting. Taylor called the police after she heard on the news that one of the suspects had been arrested for the Hume murder. Taylor told police that she was staying with Ildefonso at the Ben Franklin Motel and that Ildefonso had told her he shot Hume because Ildefonso was mad at his girl friend, Kristine Reh, and he "wanted the world to feel his pain." Taylor said she met Reh and a friend of Reh's, Christina Devore-Alexander, when they came to the motel to purchase drugs from Ildefonso. Devore-Alexander had also told Taylor that Ildefonso confessed to shooting Hume.

Taylor also told police that she had seen Ildefonso with several guns, including a .357-caliber revolver and a 9-mm handgun. At McCowen's request, Taylor obtained bullets from the guns in Ildefonso's backpack and left the bullets with a desk clerk at the Ben Franklin Motel. McCowen picked up the bullets, which included two expended shells, one live .357-caliber round, and one live 9-mm round. Because the .357-caliber bullet was simi-

lar to the bullet taken from Hume's body, McCowen requested a comparison by the crime laboratory.

Devore-Alexander testified at trial that she and Reh were high school friends and that on September 13, 1999, Reh had called her and asked for a ride because Reh and Ildefonso, Reh's boyfriend, were arguing. Ildefonso was upset because Reh had another boyfriend and the boyfriend was about to be released from a correctional center. Devore-Alexander picked up Reh and Ildefonso, and they drove around Omaha, with Ildefonso giving directions. Near 42d and Bancroft Streets, Ildefonso directed Devore-Alexander to stop the car. When Ildefonso got out, Devore-Alexander turned to talk to Reh, who was in the rear seat. Devore-Alexander said she heard a gunshot, turned around, and saw Ildefonso with his arm extended and a gun in his hand. Hume was lying on the ground.

Ildefonso returned to the car with the gun in his hand and told Devore-Alexander to drive. She drove to her grandmother's house on North 52d Street, where the group stayed for about 3 hours. Devore-Alexander stated that Ildefonso threatened to kill her and Reh if they said anything about the shooting and told them that his life was in their hands. At about 6 a.m., Devore-Alexander gave Ildefonso and Reh a ride to Reh's car. Devore-Alexander then returned to her grandmother's house. Devore-Alexander testified that prior to the shooting, Ildefonso told her "the only thing that would make him feel better is if he shot somebody."

Reh testified at trial that after Devore-Alexander stopped her car near 42d and Bancroft Streets, Reh heard a gunshot and saw a man lying on the sidewalk as they left the area. Reh also said that she, Devore-Alexander, and Ildefonso had taken drugs together and that Ildefonso was using methamphetamine the night of the shooting.

On October 1, 1999, police took steps to obtain a warrant to search Ildefonso, a blue 1991 Chevrolet Cavalier, and a room at the Ben Franklin Motel on Interstate 80. Officer Anthony Strong began surveillance of the motel at 8 a.m. At about 11:30 a.m., Strong saw Ildefonso and Taylor leave the motel room, load the car, and stop at the motel office. When they left the motel, Strong notified Sarpy County sheriff's officers that Ildefonso and Taylor

were northbound on Interstate 80. The Sarpy County officers pulled over the car at the Harrison Street overpass. The officers told Taylor, the driver, to turn off the car's engine and throw out the keys. Taylor and Ildefonso, who was sitting in the passenger's seat, were then removed from the vehicle. Strong saw a .357-caliber revolver under the passenger's seat of the car, and a 9-mm handgun was found in a backpack in the rear seat.

Daniel Bredow, senior crime laboratory technician and firearms toolmarks examiner with the Omaha Police Department, testified that the bullet from the .357-caliber revolver was consistent with the bullets left with the desk clerk at the motel and with the bullet removed from Hume's body.

The jury found Ildefonso guilty of first degree murder and use of a firearm to commit a felony. He was sentenced to life imprisonment without parole for the murder charge and to a consecutive term of 40 to 45 years' imprisonment for the use of a firearm charge.

## ASSIGNMENTS OF ERROR

Ildefonso assigns four errors. First, he asserts that the district court erred when it failed to sustain his motion to suppress because the affidavit in support of the application for a search warrant failed to set forth sufficient probable cause to support issuance of the warrant. Second, if it is determined that trial counsel failed to properly preserve the suppression issue for appellate review, Ildefonso asserts that he was deprived of effective assistance of counsel by that failure. Third, he argues that trial counsel was ineffective in failing to challenge the search warrant's validity on the basis that "vitally important facts, shaking the reliability of the affidavit to its core, were omitted by the affiant officer." As his fourth assignment of error, Ildefonso asserts that trial counsel was ineffective in failing to object to hearsay statements by McCowen, who testified without objection as to statements given to the police by Devore-Alexander and Reh.

## ANALYSIS
### MOTION TO SUPPRESS

Ildefonso moved to suppress any and all items of personal property seized by law enforcement on October 1, 1999, from

his person, room No. 131 of the Ben Franklin Motel, or a 1991 Chevrolet Cavalier stopped at Interstate 80 and Harrison Street in Sarpy County. He argued that the evidence was seized without a warrant and was not obtained based on a valid stop and/or arrest. He asserted that the seizure based upon the warrant lacked probable cause, and he claimed that the stop was not based on exigent circumstances.

At the suppression hearing, Mark Trapp, a deputy with the Sarpy County sheriff's office, testified that he was assigned to a detail which planned to serve a warrant at the Ben Franklin Motel on October 1, 1999. Before the officers could serve the warrant, they were advised that the suspect was leaving the motel in a two-door blue Chevrolet, and the officers were told to stop the vehicle. Trapp located the vehicle and activated his cruiser's overhead lights on Interstate 80 between Harrison and 126th Streets. After an emergency response unit arrived, the individuals in the vehicle were placed in cruisers and the vehicle was searched.

The affidavit for the search warrant identified the following items as those being sought: (1) a .357-caliber revolver, "dark blue to black in color"; (2) a 9-mm semiautomatic handgun; (3) ammunition and accessories, including ammunition clips for the .357-caliber and 9-mm weapons; (4) any and all controlled substances, including but not limited to cocaine, methamphetamine, LSD, and their derivatives; (5) any and all homemade or manufactured equipment related to an illegal narcotics operation; (6) moneys and records pertaining to an illegal narcotics operation; and (7) venue items for Ildefonso.

Trapp observed a revolver under the passenger's seat of the vehicle and a backpack in the rear seat. The backpack contained a 9-mm handgun, a baggie of white powder, three baggies of "seed," and approximately $4,000 in cash.

As grounds for the warrant, the affidavit, which was sworn to by McCowen, stated:

> On Sunday, 26th September 1999, at 1220 hours ILDE-FONSO, Arlyn P. entered the emergency room area of St. Joseph's Hospital in Omaha, Douglas County, Nebraska with a gunshot wound to his right upper arm. ILDEFONSO told staff members and responding officers of the Omaha Police Department that he was shot by the occupants of a

"silver vehicle" while travelling eastbound on Interstate Highway 80 near 42nd Street. The incident was reported under Omaha Police RB# 09362S.

TAYLOR Amy advised affiant officer during an interview on Tuesday, 28 September 1999 that she was a passenger in the vehicle at the time of the shooting and knew it was provoked when ILDEFONSO waved a .357 caliber handgun and flashed "gang signs" at the occupants of the second vehicle involved. ILDEFONSO, she said, always had in his possession two handguns, a .357 caliber revolver and a 9 mm semiautomatic. TAYLOR said she drove ILDEFONSO to the hospital after first depositing a green bookbag which contained two handguns and drugs described as "crank, acid, and cocaine" at 5145 N. 47th Street, her former residence. Following treatment at the hospital, TAYLOR said she reclaimed the bag and turned it over to ILDEFONSO.

ILDEFONSO and TAYLOR went to Ben Franklin Motel and registered in Room #131. The weapons, she said, were in the room on Tuesday, 28 September 1999. On Wednesday, 29 September, 1999, she provided affiant officer with ammunition for the weapons which was taken from Room #131. The ammunition was booked into property after affiant officer picked it up at the Ben Franklin Motel.

ILDEFONSO is a convicted felon. His record show [sic] a May 2nd 1995 conviction for "Theft 2nd Degree." And served five years in the Iowa Department of Corrections.

Based on the investigation of the Omaha Police Department Homicide/Assault Unit and affiant officer it can be shown that ILDEFONSO, Arlyn P. is a convicted felon in possession [of] two firearms and illegal drugs and said property is kept or maintained in room #131 of the Ben Franklin Motel or the blue Chevrolet Cavalier which ILDEFONSO drives.

Based upon the information contained in the affidavit, a judge of the Douglas County District Court issued a search warrant for Ildefonso and room No. 131 of the Ben Franklin Motel, finding probable cause to believe that the items identified could be found on Ildefonso's person or in the motel room.

After hearing testimony at the suppression hearing, the district court found that there were exigent circumstances to merit the search of the vehicle and that the warrant was supported by probable cause. Taylor had told McCowen that Ildefonso was shot in the arm after he waved a .357-caliber revolver and flashed gang signs at the occupants of another vehicle. The court noted that although the officers did not know Ildefonso, they knew of the incident during which he was shot, and they knew that the man seen with Taylor had an injured arm. The court found that Taylor's veracity had not been attacked within the four corners of the affidavit and that the affidavit was proper and provided good and probable cause for issuance of the search warrant. The court overruled the motion to suppress, finding exigent circumstances in the evidence that Ildefonso and Taylor had packed up and left the motel.

■ On appeal, Ildefonso argues that the affidavit failed to set forth sufficient facts that would establish probable cause to support issuance of the warrant. Therefore, we must examine the facts contained in the affidavit to determine whether the district court erred in finding probable cause. This court has held that suppression is an appropriate remedy if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his or her judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid. If none of the aforementioned circumstances exist, the evidence should not be suppressed. *State v. Davidson*, 260 Neb. 417, 618 N.W.2d 418 (2000). Ildefonso's argument centers on the third basis for suppression—that the affidavit lacks indicia of probable cause.

■ A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. Proof of

probable cause justifying issuance of a search warrant generally must consist of facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at that time. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999).

In reviewing the strength of an affidavit as a basis for finding probable cause to issue a search warrant, we have adopted the "totality of the circumstances" rule established by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996). The magistrate who is evaluating the probable cause question must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* The question is whether the issuing magistrate had a "substantial basis" for finding that the affidavit established probable cause. *Id.*

When a search warrant is obtained on the strength of information from an informant, the affidavit in support of issuance of the warrant must set forth facts demonstrating the basis of the informant's knowledge of criminal activity and establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *Id.*

The affidavit in this case is based on two sources of information: (1) a police report of an earlier incident and (2) an interview with Taylor. The police report was filed after the incident in which Ildefonso waved a gun and flashed gang signs at another car and was shot. He was treated at a hospital for a gunshot wound after the hospital reported the incident. The affidavit is also based on information obtained during an interview with Taylor. She stated that Ildefonso always had two guns in his possession and that she was a passenger in the car when Ildefonso was shot. Taylor reported that she had dropped off a backpack containing illegal drugs at her former residence before taking Ildefonso to the hospital for treatment. She told officers that she and Ildefonso were registered in room No. 131 of the motel and

that she had seen Ildefonso's guns in the room on Tuesday, September 28, 1999.

To rely upon the information provided by Taylor to support a finding of probable cause, the issuing magistrate must have found that Taylor's reliability as an informant had been demonstrated. The reliability of an informant may be established by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, or (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001), *cert. denied* 533 U.S. 952, 121 S. Ct. 2596, 150 L. Ed. 2d 754.

Reviewing the information within the four corners of the affidavit, there is no suggestion that Taylor had given reliable information to police officers in the past or that police officers independently investigated her reliability or the reliability of any information she had given, although police were aware of the earlier incident in which Ildefonso had been shot. Therefore, to establish Taylor's reliability, the affidavit must set forth that she made a statement against her penal interest or that she was a citizen informant.

We do not determine whether Taylor could be considered a citizen informant because her reliability was established by the fact that she made a statement against her penal interest. In providing information to the police about Ildefonso, Taylor told McCowen that she was with Ildefonso when he was shot and that before taking him to the hospital, she deposited "a green bookbag which contained two handguns and drugs described as 'crank, acid, and cocaine' at 5145 N. 47th Street, her former residence." Taylor said that after Ildefonso was treated at the hospital, "she reclaimed the bag and turned it over to ILDE-FONSO." Taylor's statement was against her penal interest because it could have been used to charge her with possession of a controlled substance.

"[A] statement against penal interest, in and of itself, carries a sufficient indicia of reliability to support a finding of

probable cause." *State v. Grimes*, 246 Neb. 473, 480, 519 N.W.2d 507, 514 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). See, also, *United States v. Harris*, 403 U.S. 573, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971). In *Harris*, the Court stated: "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." 403 U.S. at 583-84. We conclude that Taylor's statement against penal interest established her reliability and supported the finding of probable cause.

After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996). The affidavit provided sufficient information to find that there was probable cause to issue the search warrant. A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001), *cert. denied* 533 U.S. 952, 121 S. Ct. 2596, 150 L. Ed. 2d 754. The district court correctly overruled the motion to suppress. This assignment of error is without merit.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Ildefonso asserts that he received ineffective assistance of counsel in three ways: (1) His trial counsel failed to preserve the issues raised in his motion to suppress; (2) his trial counsel failed to challenge the affidavit by filing a motion based on *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); and (3) his trial counsel failed to object to hearsay statements when McCowen testified as to the statements given to police by Devore-Alexander and Reh.

■ The duty rests on the defendant, after his or her motion to suppress has been denied, to object to the admission of the evidence at trial and to state the specific grounds of the objection if not apparent from the context in which the objection was made. *State v. Bray*, 243 Neb. 886, 503 N.W.2d 221 (1993). The record shows that trial counsel adequately preserved all issues related to the motion to suppress by renewing his objection when the evidence was offered at trial. Therefore, the first claim of ineffective assistance of counsel is without merit.

Ildefonso next argues that trial counsel was ineffective when he failed to challenge the search warrant's validity under *Franks* because McCowen omitted important facts from the affidavit, including information concerning Taylor's relationship with an earlier suspect in the case. Also, McCowen did not include in the affidavit the fact that he picked up the ammunition from the motel desk clerk, rather than obtaining it directly from Taylor.

■ To state a claim of ineffectiveness of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and demonstrate that a conviction must be overturned, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. See *State v. Dunster, ante* p. 329, 631 N.W.2d 879 (2001). The record shows that Ildefonso's counsel did not request a *Franks* hearing, but that does not necessarily demonstrate deficient performance by counsel.

In *Franks*, the Court held that

where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of

the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
438 U.S. at 155-56.

In *State v. Williams*, 214 Neb. 923, 336 N.W.2d 605 (1983), this court noted that under *Franks*, a challenger must attack the veracity of only the affiant and not of any other informant in order to be entitled to a hearing. The challenger must also make a "'substantial preliminary showing,' including allegations of 'deliberate falsehood or of reckless disregard for the truth,' supported by an offer of proof." *Williams*, 214 Neb. at 926, 336 N.W.2d at 607. No hearing is required if, when the material which is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause. *Id.*

Ildefonso offers no evidence to suggest that any statement in the affidavit is a deliberate falsehood or shows reckless disregard for the truth. Although the affidavit did not contain any mention of an alleged relationship between Taylor and one of the individuals who had been arrested in connection with the murder, the finding of probable cause was not related to any evidence of such a relationship. The district court did not consider any false statement because none was made in the affidavit.

The second statement which Ildefonso alleges to be false concerns the method by which McCowen obtained the ammunition. This information was not deliberately false or made with reckless disregard for the truth, nor was it necessary to find probable cause.

Ildefonso has not demonstrated that trial counsel was ineffective by failing to request a *Franks* hearing. This assignment of error has no merit.

Ildefonso also argues that trial counsel was ineffective in failing to object to McCowen's hearsay testimony concerning statements made by Devore-Alexander and Reh. Ildefonso claims that McCowen's testimony rehabilitated weak testimony given by these witnesses concerning the events on the night of the murder. The State admits that the testimony was "conceptually hearsay," but it argues that the testimony was cumulative, that the testimony of Devore-Alexander and Reh was "consistent and

compelling," and that the failure to object did not prejudice Ildefonso. See brief for appellee at 23-24.

McCowen's testimony, in which he repeated statements made by Devore-Alexander and Reh, was hearsay. It consisted of statements made by one other than the declarant while testifying at trial, and the testimony was offered to prove the truth of the matter asserted. See Neb. Rev. Stat. § 27-801(3) (Reissue 1995). As hearsay, the testimony should have been objected to, and the objection would have been sustained if there were no exceptions to hearsay which applied. Neither party has suggested any exception to the hearsay rule which might apply in this case.

However, McCowen's testimony reiterated statements made by Devore-Alexander and Reh, witnesses who heard the gunshot and saw the body of Hume in the street. There is no claim that McCowen testified to any facts which were in conflict with the testimony of the two witnesses, and his testimony was cumulative to their testimony. Even if Ildefonso's counsel should have objected to the testimony as hearsay, "erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact." See *State v. Quintana*, 261 Neb. 38, 63, 621 N.W.2d 121, 140 (2001). McCowen's testimony was cumulative.

Ildefonso also suggests that McCowen's testimony was harmful because it rehabilitated the testimony of Devore-Alexander and Reh, who were not credible. In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001).

Two witnesses testified that they heard a gunshot and that they saw Hume's body lying in the street. Devore-Alexander testified that Ildefonso returned to the car with a gun in his hand. Prior to the shooting, Ildefonso told Devore-Alexander that "the only thing that would make him feel better is if he shot somebody." No evidence was offered at trial to refute the State's evidence of

guilt. The hearsay testimony was cumulative. The evidence of guilt, including Ildefonso's confession to Taylor, was more than sufficient to support the convictions. This assignment of error has no merit.

## SENTENCING

Although neither party raises sentencing as an issue, we note that the district court sentenced Ildefonso to life imprisonment without parole on the first degree murder charge and to a consecutive sentence of 40 to 45 years' imprisonment on the use of a firearm charge. The sentencing order provided that Ildefonso would be given credit for time served (318 days) against the sentence imposed on the first degree murder charge. We find plain error in the sentencing.

> Upon being sentenced to life imprisonment for first degree murder, a defendant is not entitled to credit for time served in custodial detention pending trial and sentence; however, when the defendant receives a sentence consecutive to the life sentence that has a maximum and minimum term, the defendant is entitled to receive credit for time served against the consecutive sentence.

*State v. Mantich*, 249 Neb. 311, 329, 543 N.W.2d 181, 194 (1996).

A sentencing judge must separately determine, state, and grant the amount of credit on the defendant's sentence to which the defendant is entitled. *State v. Esquivel*, 244 Neb. 308, 505 N.W.2d 736 (1993). Ildefonso is entitled to receive credit for time served, but the credit should be applied against the use of a firearm charge rather than against the first degree murder charge. Ildefonso's sentences are therefore vacated, and the cause is remanded to the district court with directions to resentence Ildefonso, giving him credit for time served against the conviction for use of a firearm to commit a felony.

## CONCLUSION

The affidavit in support of the search warrant provided probable cause to issue the warrant, and the district court properly overruled the motion to suppress. Ildefonso did not receive ineffective assistance of trial counsel due to counsel's failure to request a hearing in accordance with *Franks v. Delaware*, 438

U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), because no false statements were made in the affidavit. As to whether trial counsel provided ineffective assistance by failing to object to hearsay testimony, we find that any error that occurred was harmless because the testimony was cumulative and the evidence of guilt was more than sufficient to sustain the convictions. Thus, Ildefonso's convictions are affirmed.

The sentencing order incorrectly granted Ildefonso credit for time served against the life sentence. We therefore find that Ildefonso's sentences should be vacated. The cause is remanded for resentencing, and the district court is directed to apply credit for time served to the conviction for use of a firearm to commit a felony.

AFFIRMED IN PART, AND IN PART SENTENCES VACATED AND CAUSE REMANDED FOR RESENTENCING.