746 N.W.2d 690 (2008)
275 Neb. 391
STATE of Nebraska, appellee,
v.
Danny L. SING, appellant.
No. S-07-345.
Supreme Court of Nebraska.
April 4, 2008.
*692 Thomas C. Riley, Douglas County Public Defender, Mikki C. Jerabek, and Scott C. Sladek, Omaha, for appellant.
Jon Bruning, Attorney General, and James D. Smith, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*693 WRIGHT, J.

NATURE OF CASE
Danny L. Sing was convicted of first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a felon, following the death of Edi Torres. Sing was sentenced to life in prison, a consecutive term of 5 to 10 years in prison for use of a weapon, and a concurrent term of 5 to 10 years for possession of a deadly weapon. He appeals.

SCOPE OF REVIEW
In reviewing a claim chat the evidence was insufficient to support a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. See State v. Thurman, 273 Neb. 518, 730 N.W.2d 805 (2007).

FACTS
Sing lived on South 9th Street in Omaha, Nebraska. A common driveway ran between Sing's house and the house next door, in which Loc Nguyen and Johanna Nguyen resided. The Nguyens had moved in several weeks prior to September 30, 2005, and in that time, police had been called to the Nguyens' house for a noise complaint and a complaint about a dog. The police had also towed a vehicle from the backyard of the Nguyens' house.
Torres was a friend of Loc's and often came to the Nguyens' house to lift weights. On September 30, 2005, Loc and Torres made plans to meet around midnight. When Loc and Johanna arrived home, Torres was waiting on the enclosed front porch. Because Loc had sprained his hand and could not lift weights, he and Torres decided to buy some beer. Loc, Johanna, and Torres were on the porch when Sing came over at about 1 a.m.
Sing drank two or three beers in 15 to 30 minutes. He repeatedly talked about a stolen vehicle that had been parked behind the Nguyens' house. Loc asked Sing if he had called the police about the vehicle, and Sing said he was not a "snitch." Because Loc's wrist was wrapped, Sing repeatedly asked Loc what was wrong with his wrist. Loc finally responded that he was about to sprain his other wrist if Sing did not stop asking about it. Loc, Johanna, and Torres all laughed at this, but Sing did not. At Loc's suggestion, Sing left, and Loc secured the door to the porch.
A few minutes later, Loc saw Sing run up the steps to the porch. Torres was seated on a chair, Johanna was sitting on the weight bench, and Loc was standing against the house near Johanna. Sing tried to open the door, but it was locked. He had a small pistol in his left hand and a shotgun in his right hand. Sing asked Loc if he had "anything to say now" and asked Loc and Torres if they were "tough now." Sing pointed the pistol at Loc and Torres, and the muzzle of the pistol was touching the glass in the door.
Torres told Sing not to point the gun at him or anyone else. Sing then pointed the pistol at Loc's face and fired, but Loc dodged and the shot missed him. Torres told Loc to take Johanna inside the house, and Loc walked behind Johanna to protect her. Before Johanna got into the house, she heard a gun-shot that was louder than the first. As Loc reached the doorway, he looked at Torres to tell him to come into the house. At that moment, a gun was fired and Loc saw Sing with both hands on the shotgun, which was pointed at Torres. *694 Torres was knocked backward, and his chair flew against the wall. Loc saw Sing run away.
Inside the house, Johanna called the 911 emergency dispatch service. Loc went into the kitchen, grabbed two knives, and went to the back door because he thought Sing might try to return through that door. Loc then returned to the front porch and saw Torres struggling to move. When medical personnel arrived, Loc told them to hurry because Torres was badly injured. Loc saw Sing on his porch, looking out. When the police arrived, Loc directed them to Sing's house. Torres died later that day from a gunshot wound to the head. The shot had been roughly parallel to the top of Torres' head.
Police officers ordered Sing to come out of his house, and he was taken into custody. Police found a shotgun shell on the ground near the garage of Sing's house and a shotgun in a wooded area behind Sing's house. The shotgun was test fired and found to be operational.
Sing told the officer who transported him to police headquarters that he had gone next door to confront Loc and Johanna about a car which had been "dumped" in his backyard and that they laughed at him. He said that Loc and Torres told him they were going to "storm troop his residence, kill him, [and] rape his wife." Loc and Johanna denied that anyone made any threats to Sing and denied that there had been foul language spoken that night or raised voices.
During a police interview the morning of October 1, 2005, Sing stated that he had gone to tell the Nguyens that they lived in a quiet neighborhood and that it was not "cool" to bring the police around. Sing claimed Loc stated that if they found out Sing had called the police about the stolen car, they would come to his house, rape his wife or girlfriend, and kill him while he was sleeping. Sing gave several explanations for the events of the night of September 30, 2005: (1) He got his guns from his house and went next door because he wanted to scare the Nguyens and Torres; (2) the shooting was an accident; (3) he stumbled, and the shotgun went off; and (4) he blacked out and had no memory of that segment of time.
Sing told police that he did not have to work on September 30, 2005, and that he began drinking about 11 a.m. He claimed that he consumed approximately 34 beers between 11 a.m. and 5 p.m. and napped until about 8 p.m. When his girlfriend arrived home, they went to a neighborhood bar. He claimed to have consumed six or seven beers there, as well as seven shots of liqueur. Sing then went home and drank "a couple" of beers before going to the Nguyens' house.
Sing was charged in an amended information with first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a felon. A jury returned verdicts of guilty on all three charges.
Sing was sentenced to life in prison for first degree murder and 5 to 10 years' imprisonment for use of a weapon to commit a felony, to be served consecutively to the life sentence. He was sentenced to 5 to 10 years' imprisonment for possession of a deadly weapon by a felon, to be served concurrently to the sentence for the weapons conviction. He was given credit for time served of 522 days against the sentence imposed for first degree murder.

ASSIGNMENTS OF ERROR
Sing's assignments of error can be summarized to allege that the evidence was insufficient to support the conviction for first degree murder and that the district court erred in sustaining the State's motion *695 in limine regarding the victim's alleged gang affiliation.

ANALYSIS

SUFFICIENCY OF EVIDENCE
Sing asserts that the evidence was insufficient to support the conviction for first degree murder. He argues that the State failed to prove that he killed Torres purposely and with deliberate and premeditated malice. Neb.Rev.Stat. § 28-303(1) (Cum.Supp.2006) provides that the killing must be committed "purposely and with deliberate and premeditated malice." Sing claims that the evidence never established such intent and that the record supports a finding that the death was the result of an accident. He alleges that he had consumed an excessive amount of alcohol, he was verbally threatened by Loc and Torres, and the shotgun discharged when he stumbled in his drunken state.
The jury was given a step instruction stating that Sing could be found guilty of first degree murder, second degree murder, or manslaughter, or found not guilty. It was also given an instruction defining intoxication as a defense. Although Sing argues that the facts support a manslaughter charge, we note that the jury was given this option, but did not make that factual finding.
Concerning the elements of first degree murder, we have held that deliberate means "not suddenly, not rashly, and requires that the defendant considered the probable consequences of his or her act before doing the act." State v. Robinson, 272 Neb. 582, 627, 724 N.W.2d 35, 73 (2006). Premeditated means the actor has formed a design to commit an act before it is done. See State v. Robinson, supra.
A person kills with premeditated malice if, before the act causing the death occurs, the person has formed the intent or determined to kill the victim without legal justification. See id. There is no particular length of time required for premeditation, as long as the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death. See id. It is for the jury to decide whether the defendant acted with premeditation. See id. When the sufficiency of the evidence as to criminal intent is questioned, independent evidence of specific intent is not required. Rather, the intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident. State v. White, 272 Neb. 421, 722 N.W.2d 343 (2006).
Loc testified that Sing returned to the porch with two guns and asked Loc if he had "anything to say now." Sing pointed a pistol directly at Loc and fired, but he missed. As Loc attempted to go into the house with Johanna, a shot was fired and he saw Sing with both hands on the shotgun. Torres was knocked back against the wall, and Sing ran away. This evidence is sufficient to demonstrate beyond a reasonable doubt that Sing intended to kill Torres. Sing formulated the design to commit the act by going to his house and returning to the Nguyens' house with two guns. It may be reasonably inferred from Sing's actions and the circumstances surrounding the incident that he had the intent to kill Torres purposely and with deliberate and premeditated malice.
Sing argues that "the homicide was the result of an accident and [was] not committed purposely with deliberate and premeditated malice." Brief for appellant at 11. Sing contends that he had two weapons, was standing in front of the porch, discharged the pistol into the doorjamb, stumbled, and then accidentally discharged *696 the shotgun. His defense was that the shooting was an accident.
The record does not support this argument. The witnesses testified that Sing did not appear to stumble or fall as he came up the steps with the guns. None of the police officers who had contact with Sing observed any instability due to intoxication. The autopsy revealed that Torres died from a gunshot that was approximately parallel to the top of his head. Loc saw Sing point the shotgun at Torres. The shotgun was tested and found to be operational. It fired as it was designed, with no defects. It had a trigger guard that would keep the trigger from being depressed if the gun was dropped. The guard was not found to be defective. There was no evidence that the shot-gun was accidentally discharged or that Sing stumbled due to his intoxication.
Sing also argues that neither Loc nor Johanna witnessed Sing discharge the shotgun. The record does not support this claim. Loc and Johanna testified that they saw Sing point the pistol and shoot in Loc's direction. Immediately after hearing a second shot, Loc saw Sling with both hands on the shotgun, which was pointed at Torres.
In reviewing a claim that the evidence was insufficient to support a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. See State v. Thurman, 273 Neb. 518, 730 N.W.2d 805 (2007). The evidence admitted at Sing's trial was sufficient to support the murder conviction. Sing's assignment of error has no merit.

MOTION IN LIMINE
Sing claims the district court erred in sustaining the State's motion in limine concerning Torres' alleged affiliation with a street gang. Prior to trial, the State argued that Sing's opinion concerning an alleged affiliation between Torres and a gang was speculation and was not relevant. Sing claimed that it was relevant to his state of mind and to explain why he feared Torres and Loc. Sing also claimed that gang members had attended gatherings at the Nguyens' house.
When the motion in limine was made, defense counsel indicated that Sing would testify at trial. The district court reserved final ruling on the receipt of gang evidence in relation to Sing's state of mind. The court directed that witnesses were not to be asked whether they were members of a gang and that Torres was not to be identified as a gang member.
Following the testimony of four police officers at trial, the issue of gang affiliation was raised again. Sing sought to present evidence that he returned to the Nguyens' residence with two guns because he believed Torres was a member of a gang based on a tattoo of the number 13 on Torres' ear. Sing intended to solicit testimony from a police officer that would support Sing's contention that he was afraid of Torres. The district court ruled that witnesses could not testify whether Sing was fearful that Torres was a member of a gang. The court stated that it would allow the witnesses to testify about subjects previously mentioned during the trial, including a stolen car, threats made to Sing, and a tattoo of the number 13. The court stated it would not allow questions regarding the alleged gang affiliation of persons who visited the Nguyens' house.
Sing did not testify at trial. The evidence of his motive and intent was presented *697 through the testimony of a police officer who had interviewed Sing. There was no evidentiary ruling by the district court that would have excluded testimony by Sing concerning his knowledge of whether Torres had any gang affiliation. Nor was there any testimony concerning how such affiliation may have affected Sing's state of mind.
Neb.Rev.Stat. § 27-103 (Reissue 1995) provides:
(I) Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:
. . . .
(b) In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.
See, also, State v. Williams, 269 Neb. 917, 697 N.W.2d 273 (2005).
In order to pre serve any error before this court, the party opposing a motion in limine which was granted must make an offer of proof outside the presence of the jury unless the evidence is apparent from the context in which the questions were asked. McCune v. Neitzel, 235 Neb. 754, 457 N.W.2d 803 (1990). See, also, State v. Bruna, 12 Neb.App. 798, 686 N.W.2d 590 (2004). There was no offer of proof made concerning any testimony related to alleged gang affiliation. There are only two references in the trial transcript that might be construed to relate to gang affiliation. One of the police officers stated that Sing described one of the individuals next door as a Hispanic male, 20 years old. with the number 13 tattooed on his right ear. The physician who completed the autopsy stated that Torres had a tattoo of the number 13 on his left ear. Sing made no offer of proof as to any witness who would have testified that Torres was a gang member or that any gang members had visited the Nguyens' home. No one testified and no offer of proof was made to suggest that Sing returned to the Nguyens' home with guns because he felt threatened by Loc or Torres due to their affiliation with a gang.
Sing argues that testimony about the gang affiliation of Torres and Loc was relevant to Sing's state of mind, specifically his fear of Torres and Loc, who Sing claimed had threatened him earlier. Sing claims that he was prejudiced because he was not allowed to present an essential aspect of his defense.
This argument has no merit. Sing did not testify. The defense presented only two witnesses: a bartender who testified as to the amount of alcohol Sing consumed the evening of the shooting and a police officer who interviewed Johanna. Apparently, the officer's testimony was intended to impeach Johanna's testimony concerning Sing's level of intoxication.
Sing did not make an offer of proof concerning testimony about gang affiliation, which testimony he claims should have been admitted. Because he did not make a record, there is nothing to support his claim that the district court wrongly sustained the motion in limine.

SENTENCES
The district court sentenced Sing to life in prison for first degree murder; to a term of 5 to 10 years in prison for use of a weapon to commit a felony, to be served consecutively to the life sentence; and to a term of 5 to 10 years in prison for the possession of a deadly weapon by a felon, to be served concurrently to the sentence for the weapons conviction. Sing was given credit for time served (522 days) against the sentence imposed on the first degree murder conviction. We find plain error in the allocation of credit for time served.
*698 When a defendant is sentenced to life imprisonment for first degree murder, the defendant is not entitled to credit for time served in custodial detention pending trial and sentence; however, when the defendant receives a sentence consecutive to the life sentence that has a maximum and minimum term, the defendant is entitled to receive credit for time served against the consecutive sentence. See State v. Ildefonso, 262 Neb. 672, 634 N.W.2d 252 (2001), citing State v. Mantich, 249 Neb. 311, 543 N.W.2d 181 (1996).
A sentencing judge must separately determine, state, and grant the amount of credit on the defendant's sentence to which the defendant is entitled. State v. Ildefonso, supra. Sing is entitled to receive credit for 522 days served, but the credit should be applied against the sentence for use of a weapon rather than against the sentence for first degree murder. We therefore modify Sing's sentences by ordering that the credit for time served be applied against the sentence for use of a weapon to commit a felony.

CONCLUSION
The evidence was sufficient to support the conviction for first degree murder, and the district court did not err in sustaining the State's motion in limine concerning evidence of gang affiliation. Thus, Sing's convictions are affirmed.
The sentencing order incorrectly granted Sing credit for time served against the life sentence. We modify the sentence to apply credit for time served to the sentence for use of a weapon to commit a felony. The sentences are, in all other respects, affirmed.
AFFIRMED AS MODIFIED.